**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| **EDWARD MONROE, FABIAN MOORE,** ) | |
| **and TIMOTHY WILLIAMS, on behalf** ) | |
| **of themselves and all other similarly** ) | |
| **situated employees,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No. 2:08-cv-2100** |
| ) | |
| **FTS USA, LLC, and UNITEK USA, LLC,** ) | |
| ) | |
| **Defendants.** ) | |

**ORDER DENYING DEFENDANTS' MOTION TO DECERTIFY CLASS**
**AND MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants FTS USA, LLC ("FTS") and UniTek USA, LLC's ("UniTek")[1] April 1, 2010 motion to decertify the plaintiff class, which now comprises over 300 individuals either currently or formerly employed by Defendants as cable installation technicians. (D.E. #193.) Plaintiffs allege that Defendants failed to pay them proper overtime compensation in accordance with the requirements of the Fair Labor Standards Act of 1938 ("FLSA" or "Act"), 29 U.S.C. §§ 201 et seq. Also before the Court is Defendants' motion for summary judgment filed April 1, 2010, seeking dismissal of all claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. (D.E. #194.) On May 5, 2010, Plaintiffs responded in opposition to Defendants' motions to decertify and for summary judgment, and with leave of court, Defendants filed replies in support of both motions on May 21, 2010.

---

[1] The Court will use "Defendants" when referring to both FTS and UniTek.

In their motion to decertify, Defendants argue that the members of the plaintiff class present claims that are radically different from one another, rendering adjudication of their claims on a classwide basis inappropriate.   In their motion for summary judgment, Defendants contend that, as a matter of law, (1) the evidence supporting Plaintiffs' claims is insufficient to support a finding that Plaintiffs are entitled to damages; (2) Plaintiffs have failed to offer a valid method by which to establish damages on a classwide basis; and (3) the evidence in the record before the Court is insufficient to support a finding that Defendants willfully violated the FLSA.   Defendants also seek summary judgment on the claims of those Plaintiffs as to whom no discovery was taken—a group that includes the vast majority of the plaintiff class members.[2]

For the reasons stated below, the Court finds that Plaintiffs' claims are substantially similar and therefore appropriate for resolution on a classwide basis. Therefore, the Court **DENIES** Defendants' motion to decertify the class.   The Court further finds that Plaintiffs have offered sufficient evidence from which the finder of fact may reasonably award damages, that Plaintiffs' damages may be calculated on a representative basis for the entire class, that disputed issues of material fact exist regarding the question of Defendants' willfulness, and that dismissal of claims brought by those class members as to whom no discovery was taken is inappropriate. Accordingly, Defendants' motion for summary judgment is **DENIED** as inappropriate.

---

[2] Defendants further single out five plaintiffs from the group of fifty plaintiffs as to whom discovery was taken and make individualized arguments as to why their claims fail.  As explained below, the Court **DENIES** summary judgment as to these plaintiffs' claims as well, but cautions the one plaintiff (Plaintiff Whitehead), who has failed to participate in discovery, that he must respond to Defendants' discovery requests within twenty (20) days of this order to avoid dismissal of his claims for lack of prosecution.

## I. BACKGROUND

Defendant FTS is a Delaware limited liability company with its principal place of business in Blue Bell, Pennsylvania, and an additional corporate office in Dallas, Texas. (Defs.' Statement of Undisputed Facts ("Defs.' SOF") ¶¶ 1-2; Pls.' Response to Defs.' Statement of Facts ("Pls.' Response to SOF") ¶¶ 1-2.)[3]  Defendant UniTek, also a Delaware limited liability company with corporate offices in Blue Bell, Pennsylvania, is the parent company of FTS.  (Defs.' SOF ¶¶ 3-4; Pls.' Response to SOF ¶¶ 3-4.)  FTS performs cable installation services in several states, including Tennessee, under contracts with cable television providers—specifically, Cox Cable Communications, Charter, Time Warner, Brighthouse, and Comcast.  (Defs.' SOF ¶¶ 3-4; Pls.' Response to SOF ¶¶ 3-4.)  FTS operates field offices (also called profit centers) in the geographic areas it services.  (Defs.' SOF ¶ 8; Pls.' Response to SOF ¶ 8.)  FTS maintains three types of employees in its field offices: (1) installation technicians, who perform services at a cable subscriber's home; (2) supervisors, who manage the installation technicians; and (3) project managers, who are responsible for the operations of the field office.  (Defs.' SOF ¶ 9; Pls.' Response to SOF ¶ 9.)

Plaintiffs are current and former cable installation technicians employed by Defendants and classified as non-exempt for purposes of the Fair Labor Standards Act. (Defs.' SOF ¶ 10; Pls.' Response to SOF ¶ 10.)  Defendants compensate technicians on a "piece-rate" system, whereby a technician is paid a set percentage of the overall billing

---

[3] Because of the voluminous discovery taken and filed in this case, the Court will alter its usual practice of citing directly to the relevant documents in the record and will instead cite Defendants' statement of undisputed facts and Plaintiffs' response, each of which was filed pursuant to Local Rule 7.2(d)(2)-(3).

and revenue he or she produces.[4]   (Pls.' Response to SOF ¶¶ 11-12.)   This process involves the technician completing a "tick sheet," which is different from the technician's timesheet and lists the work performed by the technician at a subscriber's home.  (Id. ¶ 12.)  Defendants' finance department assigns each task on the tick sheet a dollar amount, or piece-rate, that varies depending on the technician's skill level classification.  (Id.)

At the times relevant to this case, Defendants maintained a formal, written policy directing technicians to record both the time spent each day working and the production values generated that day.  (Defs.' SOF ¶¶ 17, 19-21.)  Defendants also maintained formal, written policies requiring the payment of all overtime worked, even if management did not approve the overtime work in advance.  (Defs.' SOF ¶¶ 31-32.)  Additionally, Defendants' project administrators engaged in weekly conference calls with Defendants' human resources department to address any issues with compliance and determine if additional training was needed.  (Defs.' SOF ¶ 37; Pls.' Response to SOF ¶ 37.)

Plaintiffs contend that, in spite of these policies and procedures, Defendants undertook a series of measures to prevent technicians from recording all of the hours they worked each day.  (Pls.' Response to SOF ¶¶ 17, 19-21.)  First, Plaintiffs testified that Defendants, through managerial employees in their field offices, directed technicians to understate their hours by not recording time for work that was compensable and by telling employees to record certain start and stop times for their work days regardless of the actual times they began and completed work.  (Id. ¶ 17.)  For example, according to

---

[4] Defendants characterize their compensation structure for technicians as a "job-rate" system.  Plaintiffs dispute this characterization and contend that it is a "piece-rate" system.  Because of the procedural posture by which this case comes before the Court—specifically, Defendants' motion for summary judgment—the Court construes the evidence in the light most favorable to Plaintiffs and adopts their interpretation of the relevant disputed facts for purposes of this order.

Plaintiffs' evidence, a supervisor instructed one plaintiff to record 9:00 a.m. as his start time even though he began work two hours earlier, while another plaintiff began work at 6:50 a.m., but was instructed not to clock in until 8:00 a.m.  (Id. ¶ 19 (citing Barriero Dep. at 54 and C. Huggins Dep. at 60).)  Also affecting Plaintiffs' hours was Defendants' policy of deducting for a lunch break each day irrespective of whether the technician actually took lunch—a practice the existence of which is confirmed by Defendants' managerial employees.  (Id. ¶ 19.)

Plaintiffs also offer evidence from several plaintiffs that managerial employees altered otherwise accurate timesheets from technicians to reduce or remove overtime hours.  (Id. ¶ 17.)  Other plaintiffs testified that their timesheets now contain information in handwriting they do not recognize and, in some instances, the timesheets include apparent forgeries of the technician's signature.  (Id.)  Additionally, Plaintiffs contend that Defendants have implemented their piece-rate compensation system in such a way as to discourage technicians from properly recording the hours they work.  (Id.)  Two plaintiffs testified that they knew if they accurately recorded the number of hours they worked and supervisors deemed those hours excessive, they would not be allowed to work the rest of the week.  (Id. (citing D. Dowdy Dep. at 17-18, 63 and M. Dyke Dep. at 22).)  Plaintiffs contend as well that, although supervisors, project administrators, and Defendants' corporate payroll department were each charged with reconciling Plaintiffs' timesheets and tick sheets to ensure proper payment of wages, the responsible individuals and the payroll office routinely accepted timesheets that did not match information on the corresponding tick sheet.  (Pls.' Response to SOF ¶ 25.)

Defendants assert that Plaintiffs either never complained of not receiving overtime pay or only complained to the supervisors in their field offices, but did not take their complaints to upper levels of management.  (Defs.' SOF ¶¶ 41-46.)  Plaintiffs, however, cite evidence from several Plaintiffs to the contrary.  (See, e.g., Pls.' Response to SOF ¶¶ 41-46.)  For example, Plaintiff Timothy Williams testified that he asked both his project manager and his project administrator about not receiving proper overtime pay, but neither individual was receptive to his concerns.  (Pls.' Response to SOF ¶ 41 (citing T. Williams Dep. at 19-20).)   Plaintiff Matthew Queen complained to his supervisor and project manager before complaining to Defendants' corporate payroll department, but the payroll department told him to address his concerns to his project manager.  (Id. ¶ 42 (citing M. Queen Dep. at 43-44, 46-47).)  Similarly, Plaintiffs Walter Huggins and Ben Kurk testified that they both contacted one of Defendants' corporate offices to inform it of their concerns, but neither ever received a return call.  (Id. ¶ 54 (citing W. Huggins Dep. at 18-19 and B. Kurk Dep. at 70-71).)  Additionally, Plaintiffs aver in their interrogatories and depositions that they routinely complained to their managers about not being paid for all of the hours they worked.   (Id. ¶¶ 53-54.)  However, when Plaintiffs brought their concerns to supervisors and other managers, the most they received were assurances that the issue would be handled, and Defendants continued to deny them proper overtime pay.[5]  (Id. ¶ 54.)

On February 14, 2008, Plaintiffs Edward Monroe, Fabian Moore, and Timothy Williams filed suit, on behalf of themselves and all other similarly situated employees, in

---

[5] Although Plaintiffs argue that Defendants have recently been the subject of U.S. Department of Labor investigations and named as defendants in other wage and hour lawsuits, the parties dispute the probative value of these other legal matters.  The Court finds it unnecessary to rely on these factual averments for either of the two motions before it, and therefore will not address the relevancy of these actions at this time.

the United States District Court for the Western District of Tennessee, alleging that Defendants' employment practices violated the FLSA by depriving technicians of proper overtime compensation.  The Court granted conditional class certification on March 17, 2009, Monroe v. FTS USA, LLC, 257 F.R.D. 634 (W.D. Tenn. 2009), and over 300 plaintiffs have now opted into the action.  The parties stipulated to conducting limited discovery of fifty plaintiffs—all but one of whom has provided written interrogatory responses.  Defendants then deposed sixteen of these plaintiffs.  Now, Defendants move to decertify the plaintiff class and for summary judgment.[6]

## II. LEGAL STANDARDS

### A. Substantive and Procedural Overview of the FLSA

The Fair Labor Standards Act compels employers to pay the federal minimum wage and provide overtime pay to those employees covered by the Act's overtime provisions.  See Jewell Ridge Coal Corp. v. Local No. 6167, 325 U.S. 161, 167 (1945).  An employer must compensate any covered, non-exempt employee who works more than forty hours per workweek for "employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  If the employer violates the FLSA by failing to pay the minimum wage or overtime compensation to a covered employee, then the employer is "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  In an action by an employee to

---

[6] The Court agrees with Plaintiffs that Defendants' motion for summary judgment is in tension with their motion to decertify since one seeks to conclude the case on a classwide basis while the other argues that classwide adjudication is improper.  See Helmert v. Butterball, LLC, No. 4:08CV00342 JLH, 2009 WL 5066759, at *4 n.3 (E.D. Ark. Dec. 15, 2009) (citing Spoerle v. Kraft Foods Global, Inc., 253 F.R.D. 434, 439 (W.D. Wis. 2008)).

recover unpaid wages under the FLSA,[7] the employee generally "must prove by a preponderance of evidence that he or she 'performed work for which he [or she] was not properly compensated.'" Myers v. Copper Cellar Corp., 192 F.3d 546, 551 (6th Cir. 1999) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946)).

To be liable under the FLSA, however, an employer must possess actual or constructive knowledge of the employee's overtime. Thus, "where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of . . . [the FLSA]." Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981). Nevertheless, "[w]ork not requested but suffered or permitted is work time" for which the employer is liable. 29 C.F.R. § 785.11; see Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 718 (2d Cir. 2001) ("[A]n employee must be compensated for time she works outside of her scheduled shift, even if the employer did not ask that the employee work during that time, so long as the employer 'knows or has reason to believe that [the employee] is continuing to work' and that work was 'suffered or permitted' by the employer.") (quoting 29 C.F.R. § 785.11).

To ensure compliance with its provisions, the FLSA mandates that an employer keep and preserve records of its employees' wages and hours in addition to records concerning its employment practices. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. An employee who proves that the relevant records kept by the employer are unreliable is held

---

[7] Although an employee may maintain a suit against his employer for unpaid wages or overtime compensation, the FLSA also enables the United States Secretary of Labor to sue the employer for monetary and injunctive relief. 29 U.S.C. §§ 216(b)-(c), 217; see Bureerong v. Uvawas, 922 F. Supp. 1450, 1464 (C.D. Cal. 1996).

to a less stringent standard of proof in establishing damages for unpaid overtime compensation under the FLSA.  Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946).

> [W]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

Herman v. Palo Group Foster Home, Inc., 183 F.3d 468, 472 (6th Cir. 1999) (quoting Mt. Clemens, 328 U.S. at 687-88); Myers, 192 F.3d at 551 n.9.

Under § 216(b), an aggrieved employee may bring a "collective action" on behalf of other "similarly situated" employees who expressly consent in writing to join the suit. 29 U.S.C. § 216(b).  The process of bringing a § 216(b) collective action is "distinguished from the opt-out approach utilized in class actions under Fed. R. Civ. P. 23," Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006), and employees who opt into a FLSA collective action "are party plaintiffs, unlike absent class members in a Rule 23 class action," O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 583 (6th Cir. 2009) (citing 7B Wright, Miller & Kane, Federal Practice and Procedure § 1807 at 474 n.13 (3d ed. 2005)).

Many trial courts utilize a two-step approach to certification of a collective action under § 216(b).  See id. at 583-84.  In the first stage, conditional certification is granted

on a modest factual showing that the named plaintiff or plaintiffs and the putative opt-in plaintiffs were aggrieved in some similar manner.  See White v. MPW Indus. Servs., Inc., 236 F.R.D. 363, 366 (E.D. Tenn. 2006) (collecting cases from several courts).  If this lenient standard is satisfied, the court conditionally certifies the class, and the putative class members receive notice regarding their ability to opt into the action.  Id. (citation omitted); Johnson v. Koch Foods, Inc., 657 F. Supp. 2d 951, 953-54 (E.D. Tenn. 2009). The second stage presents the more demanding and factually-intensive inquiry into whether the class should be decertified, and "to avoid decertification, a plaintiff must meet a stricter standard of proving that the putative plaintiffs are similarly situated." White, 236 F.R.D. at 366 (internal quotation marks and citations omitted); see Koch Foods, Inc., 657 F. Supp. 2d at 954.  "The burden of demonstrating that class members are similarly situated is significantly higher at the decertification stage and requires consideration of the disparate factual and employment settings of the individuals, the defenses available to the defendants, and fairness and procedural considerations."  Jordan v. IBP, Inc., 542 F. Supp. 2d 790, 812 (M.D. Tenn. 2008).

**B. Legal Standard for Motion for Summary Judgment**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324

(1986); Thaddeus-X v. Blatter, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Wade v. Knoxville Utilities Bd., 259 F.3d 452, 460 (6th Cir. 2001). At the summary judgment stage, "the judge's role is not to weigh the evidence and determine the truth of the matter, but to decide whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10A Charles A. Wright et al., Federal Practice and Procedure § 2727 (3d ed. 1998).

Once a properly supported motion for summary judgment has been made, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Anderson, 477 U.S. at 248. To avoid summary judgment, the

nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 586.

## III. ANALYSIS[8]

### A. Sufficiency of Plaintiffs' Proof as to Hours and Compensation

Defendants argue that Plaintiffs' proof is insufficient to support a finding of liability on a classwide basis and that no plaintiff in this case has offered reliable and competent proof of damages. More specifically, Defendants first contend that Plaintiffs have failed to produce evidence from which their damages can be calculated on a classwide, as opposed to an individual, basis. Stated otherwise, Defendant's position is that because Plaintiffs allege that they were deprived of pay for overtime that was worked but never reported, there is no reliable means of determining how many uncompensated overtime hours each plaintiff worked short of hearing each plaintiff's claim individually and determining both liability and damages in what would amount to nearly 300 mini-trials.[9] Further, Defendants assert that Plaintiffs' estimates of the uncompensated overtime they worked are "self-serving and speculative" and thus insufficient to support their claims as a matter of law. Finally, Defendants argue that Plaintiffs' estimates fail to account for the fact that Plaintiffs' compensation was not set at a flat per hour rate, but instead varied depending on the task performed by the technician. As a result of these alleged deficiencies in Plaintiffs' proof, Defendants maintain that the entire case must be dismissed.

---

[8] The Court will consider Defendants' motion for summary judgment before proceeding to consider their motion to decertify the plaintiff class.

[9] Though Defendants state that there are now 275 plaintiffs in this case, Plaintiffs' represent that the number of plaintiffs now stands at 303.

The evidence before the Court, however, when viewed in the light most favorable to Plaintiffs, gives rise to factual inferences that are fatal to Defendants' arguments. According to Plaintiffs' proof, Defendants—through individual supervisors and managers—instructed employees to omit overtime from their timesheets, altered timesheets that accurately reflected overtime hours, deducted time for lunch breaks whether or not employees took lunch, and knowingly accepted timesheets that did not match employee tick sheets or coincide with the hours the employees worked. These facts, if accepted by the finder of fact, compel the conclusion that Defendants' records are inaccurate or inadequate. See Robinson v. Food Serv. of Benton, Inc., 415 F. Supp. 2d 1227, 1228-29 (D. Kan. 2005) ("If the jury decides that the time records are accurate and complete, then any damages owed to plaintiffs will be readily ascertainable by reference to those records. If the jury decides that the time records are inaccurate or incomplete, then plaintiffs' evidence concerning their damages is sufficient . . . .").

Because Defendants' records—at least according to Plaintiffs' evidence—are inaccurate, Plaintiffs' "burden of proof is relaxed, and, upon satisfaction of that relaxed burden, the onus shifts to the employer to negate the employee's inferential damage estimate." Myers, 192 F.3d at 551. To support their inferential damage estimate, Plaintiffs use the memories of individual plaintiff-employee witnesses to develop estimates as to how much overtime Plaintiffs worked without compensation. Defendants assert that this evidence is insufficient because it is "self-serving." The Court disagrees. As with any testimony that depends on the memory of a party, there are a host of reasons—including bias—that an estimate based on a plaintiff's recollection of hours worked weeks, months, and years previous might be inaccurate. Defendants will no

doubt attempt to impeach Plaintiffs' estimates at trial, but the fact that evidence may be impeached for bias is no cause for its categorical exclusion.  For well more than a century, Anglo-American jurisprudence has been free of the former rule by which a party was disqualified from acting as a witness in his own case on the grounds that testimony from parties is inherently untrustworthy.  See Ferguson v. Georgia, 365 U.S. 570, 573-83 (1961) (tracing the demise of this rule in both civil and criminal cases throughout Anglo-American legal world); see also Fed. R. Evid. 601 ("Every person is competent to be a witness except as otherwise provided in these rules.").  Thus, the mere fact that a plaintiff's damages estimate may be self-serving hardly makes the plaintiff's evidence incompetent.  See, e.g., Donovan v. Kentwood Devel. Co., 549 F. Supp. 480, 485-87 (D. Md. 1982).  Although Defendants urge the Court to reject Plaintiff's estimates of their uncompensated overtime as self-serving, the Court finds that Plaintiffs' approximations are sufficient for consideration by the factfinder at trial as a good faith "inferential damage estimate" of Plaintiffs' purported back wages.  See Herman, 183 F.3d at 472 (quoting Mt. Clemens, 328 U.S. at 687-88).

Defendants likewise contend that Plaintiffs' estimates are too "speculative" to allow their claims to survive summary judgment and that, because Plaintiffs' hourly rate varies depending on the type of job performed, Plaintiffs must prove the type of work they undertook in their overtime hours in order to recover any pay for that time.  It is, however, a fundamental precept of the FLSA that an employee "should not be denied [recovery] because proof of the number of hours worked is inexact or not perfectly accurate."  Mendez v. Brady, 618 F. Supp. 579, 587 (W.D. Mich. 1985) (citations omitted); see Berger v. Cleveland Clinic Found., No. 1:05 CV 1508, 2007 WL 2902907,

at *15 (N.D. Ohio Sept. 29, 2007) (quoting <u>Mendez</u>, 618 F. Supp. at 587); <u>cf.</u> <u>Mt.</u>

<u>Clemens</u>, 328 U.S. at 688.  Moreover, as the Supreme Court has explained:

> [t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of . . . the Act . . . .  Nor is such a result to be condemned by the rule that precludes the recovery of uncertain and speculative damages. That rule applies only to situations where the fact of damage is itself uncertain.  But here we are assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute.   The damage is therefore certain.   The uncertainty lies only in the amount of damages  arising  from  the  statutory  violation  by  the employer. In such a case it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts.  It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages.

<u>Mt. Clemens</u>, 328 U.S. at 688 (internal quotation marks and citations omitted); <u>see</u>

<u>Donovan v. Tony and Susan Alamo Found.</u>, 722 F.2d 397, 403-04 (8th Cir. 1983).  In the

instant  case,  Plaintiffs  offer  substantial  evidence  that  they  worked  uncompensated

overtime, and thus their right to recovery is not speculative.  Further, the fact that the type

of work Plaintiffs performed determined their rate of compensation does not alter the fact

that, if they worked overtime performing any task for Defendants, Plaintiffs were entitled

to receive compensation.  The fact that this calculation will necessarily be inexact does

not mean that Plaintiffs did not suffer damages.   At trial, Plaintiffs need only offer

evidence from which the finder of fact can reasonably infer what their pay would have

been otherwise.  Therefore, Defendants are not entitled to summary judgment.

The Court also rejects Defendants' contention that Plaintiffs have failed to show

that this is a proper case in which to litigate and award damages on a classwide basis.

Defendants aver that the claims of all but the forty-nine members of the plaintiff class who have supplied evidence that they worked uncompensated overtime should fail because the record contains no evidence that these other class members worked uncompensated overtime.  First, the Court cannot accept Defendants' contention that the parties' stipulated agreement to limit discovery to fifty representative plaintiffs did not also manifest Defendants' acquiescence to a process by which the remaining members of the class would not have to produce evidence as a prerequisite to proceeding to trial on their claims.  Nevertheless, even if Defendants only agreed to limit discovery and did not also agree to litigate the claims of the class in a representative manner, Plaintiffs have come forward with damages estimates from the representative plaintiffs on which the finder of fact may reasonably establish damages for the entire class of plaintiffs as a matter of just and reasonable inference.

The Sixth Circuit has expressly recognized that "it is possible that representative testimony from a subset of plaintiffs could be used to facilitate the presentation of proof of FLSA violations, when such proof would ordinarily be individualized," O'Brien, 575 F.3d at 585, and that "[t]he testimony of fairly representative employees may be the basis for an award of back wages to nontestifying employees," U.S. Dep't of Labor v. Cole Enters., Inc., 62 F.3d 775, 781 (6th Cir. 1995) (citations omitted); see, e.g., Baden-Winterwood v. Life Time Fitness, Inc., 729 F. Supp. 2d 965, 995-97 (S.D. Ohio 2010) (utilizing testimony of representative plaintiffs to set damages for nontestifying plaintiffs).

As explained more fully in the Court's discussion of Defendants' motion to decertify the plaintiff class, Plaintiffs have demonstrated that this case is appropriate for

trial on representational proof.   Plaintiffs' evidence, if credited, establishes that Defendants violated the FLSA with respect to all members of the class, which means that, if the finder of fact agrees with Plaintiffs that FLSA violations occurred, then the factfinder will be tasked with setting Plaintiffs' damages.  Damages in such a case are not set according to proof by a preponderance of the evidence as to every individual plaintiff, but in accordance with the amount the representational proof establishes for the class members as a matter of just and reasonable inference.  See Herman, 183 F.3d at 472. Evidence from every member of the plaintiff class is not required for this task and, if required, would be so burdensome as to make trial of this case, or any other large collective action under § 216(b), impracticable.  Accordingly, Defendants' motion for summary judgment on the grounds that Plaintiffs' proof is insufficient to establish violations of the FLSA and to set damages as to the entire class is **DENIED**.

## B. Evidence of Defendants' Willfulness

The Court also denies Defendants motion for summary judgment as to whether any violation of the FLSA by Defendants was willful.  Although FLSA claims are normally subject to a two-year statute of limitations, a three-year statute of limitations applies where the plaintiff proves by a preponderance of the evidence that the employer's violation was willful.  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133-35 (1988); Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 967 (6th Cir. 1991).  For a FLSA violation to be considered willful, the plaintiff must show "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute[.]"  McLaughlin, 486 U.S. at 133; Dole, 942 F.2d at 967.  Noncompliance with the

FLSA that is merely negligent, even if unreasonable, is not considered willful. McLaughlin, 486 U.S. at 135 & n.13.

Defendants argue that the evidence before the Court fails to show that any failure to properly pay Plaintiffs overtime, as mandated by the FLSA, was willful. Defendants contend that because Plaintiffs received compensation in accordance with the timesheets Plaintiffs admit they submitted, any FLSA violation would not be willful. Defendants additionally argue that they have shown that they had in place a series of measures to guarantee FLSA compliance, including a written policy to pay all overtime due, individual and group training for managers on how to ensure that overtime is properly recorded, instruction for technicians on filling out timesheets, and internal auditing mechanisms designed to reconcile any potential discrepancies between an employee's timesheet and his tick sheet. As a result, Defendants assert, any FLSA violation was the result of "rogue" managers or supervisors in individual offices, not company policy. Defendants also imply that Plaintiffs must show that they informed a corporate officer of any problems in receiving overtime pay in order to show a willful FLSA violation.

Despite Defendants' contentions, the Court finds that Plaintiffs' proof belies Defendants' factual assertions, creating material issues of fact for trial. First, the existence of written policies setting forth proper rules for the payment of overtime does not itself immunize an employer from a finding that the employer willfully violated the FLSA. See Reich v. Dep't of Conservation & Nat'l Res., 28 F.3d 1076, 1083 (11th Cir. 1994); see also Chao v. Gotham Registry, Inc., 514 F.3d 280, 288-89 (2d Cir. 2008); cf. 29 C.F.R. § 785.13 ("[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed . . . . The mere

promulgation of a rule against such work is not enough.  Management has the power to enforce the rule and must make every effort to do so.").  Plaintiffs have offered substantial evidence that supervisors instructed technicians to omit overtime from their timesheets and otherwise understate their hours.  Plaintiffs have further offered evidence that supervisors adjusted hours recorded by technicians to eliminate overtime pay and that, notwithstanding the internal reconciliation process, Defendants paid overtime based on timesheets that reflected less time worked than the corresponding tick sheets.  These violations allegedly occurred not at a few discrete locations, but at field offices across the country.  Such evidence suggests the possibility of a company culture in which written policies on overtime were disregarded as a matter of course.  This allows the factfinder to conclude that Defendants willfully failed to ensure FLSA compliance.

Moreover, since Plaintiffs contend that they did not record the time they worked overtime because their supervisors' instructed them not to, Defendants cannot escape a finding of willfulness by asserting that Plaintiffs failed to properly document their overtime hours.  Jarrett v. ERC Props., Inc., 211 F.3d 1078, 1083 (8th Cir. 2000) (deeming evidence sufficient to sustain a finding of willfulness where employee was told by immediate supervisors to not record overtime despite policy manual indicating otherwise).  Contrary to Defendants' representations, members of the Plaintiff class have offered proof that they reported their concerns about not receiving proper overtime pay to their supervisors.  Although there exists no requirement that an FLSA plaintiff report the nonpayment of overtime to a corporate officer, at least two plaintiffs testified that they attempted to report their concerns about uncompensated overtime to Defendants' corporate headquarters, only to receive no response.

If accepted, Plaintiffs' evidence indicates that Defendants' alleged violations of the FLSA were not merely negligent, but were instead the result of a pervasive policy within the ranks of Defendants' management to deny pay for compensable overtime worked by technicians.  In light of this evidence, the Court finds that there are disputed issues of material fact as to the question of Defendants' willfulness, making summary judgment inappropriate.

### C. Plaintiffs Dowdy, Jones, Crossan, Boone, and Whitehead

In addition to the arguments advanced regarding the plaintiff class as a whole, Defendants also offer specific reasons for dismissal of the claims of five individual members of the plaintiff class.

#### 1. Plaintiffs Dowdy and Jones

Defendants first argue that the Court should dismiss the claims of Plaintiffs Danny Dowdy and Marcus Jones because they intentionally did not report overtime hours.  Although Defendants are correct that an employer is generally not liable for overtime under the FLSA if the employee deliberately prevents the employer from learning of the overtime worked, see Brennan v. Qwest Commc'ns Int'l, Inc., 727 F. Supp. 2d 751, 758-59 (D. Minn. 2010), where the employee's failure to report overtime results from a supervisor's direction to not record overtime, the employer remains liable, see Allen v. Board of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1319-20 (11th Cir. 2007) ("[W]hen an employer's actions squelch truthful reports of overtime worked, or where the employer encourages artificially low reporting, it cannot disclaim knowledge.") (citing Brennan v. Gen. Motors Acceptance Corp., 482 F.2d 825, 828 (5th Cir. 1973)); see, e.g., Jarrett, 211 F.3d at 1083.  Plaintiffs Dowdy and Jones both testified

that they refrained from reporting overtime only because they were told by their supervisors that they should not record time beyond the normal forty-hour workweek. (See Pls.' Response to SOF ¶¶ 47, 50.)   Plaintiff Dowdy even testified that he was threatened with termination if he continued to report overtime.  Rather than undermining the claims of Plaintiffs Dowdy and Jones, these facts support the contention of the entire plaintiff class that Defendants engaged in a widespread policy of discouraging the recording of overtime by technicians.  Accordingly, Defendants' motion as to Plaintiffs Dowdy and Jones is **DENIED**.

### 2. Plaintiffs Crossan and Boone

Defendants next contend that the Court must dismiss Plaintiff Paul Crossan's claims because, when deposed, he failed to provide testimony to reasonably support the estimated hours of uncompensated overtime he worked.   Defendants, however, mischaracterize the nature of the Plaintiff Crossan's testimony.  Plaintiff Crossan testified that he based his damages estimate on the average number of hours he recalls working per day and the number of times he remembers not returning home until well after the normal end time for his workday.  Although he used the term "guesstimate" to describe his calculation, he clearly purports to base his assertion on his recollection of the facts, making it sufficient for consideration by the factfinder in reaching a just and reasonable approximation of overtime owed.  (Id. ¶ 49.)

Defendants challenge Plaintiff Tyrus Boone's claims on the grounds that, when he testified, he could not recall whether his timesheets were accurate.  What Defendants omit is that Plaintiff Boone specifically testified that he recalled observing supervisors and others alter his timesheets after he had turned them in.  (Id. ¶ 51.)  Clearly, a

permissible inference to be drawn from his testimony was that he could not speak to the accuracy of any particular timesheet because he knew his timesheets were altered. Likewise, Plaintiff Boone is not required to testify as the exact dates on which he believes he worked uncompensated overtime.  This does not mean that he is precluded from testifying generally that he recalls working overtime for which he did not receive proper compensation.  Therefore, Defendants' motion as to Plaintiffs Crossan and Boone is **DENIED**.

### 3. Plaintiff Whitehead

Finally, Defendants move for summary judgment as to the claims of Plaintiff Christopher Andrew Whitehead.  Counsel selected Plaintiff Whitehead as one of the fifty members of the plaintiff class from whom discovery would be taken.   Although Defendants sent him interrogatories and requests for admissions, Plaintiff Whitehead has failed to respond to Defendants' discovery.  Defendants cast their request as one for summary judgment based on a lack of evidence in the record to support Plaintiff Whitehead's claims, but the Court finds that Defendants' request is more appropriately analyzed as a motion to dismiss for failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure.

Considering all appropriate factors, the Court finds that dismissal of Plaintiff Whitehead's claims at this juncture is inappropriate.  See Schafer v. City of Defiance Police Dep't, 529 F.3d 731, 737 (6th Cir. 2008) (articulating factors to consider in determining whether to dismiss for failure to prosecute, including prejudice to the defendant, whether the plaintiff was previously warned about the consequences of failing to prosecute, and whether less drastic alternatives have already been imposed).  Because

the other forty-nine representative plaintiffs responded to discovery, Defendant is not prejudiced by Plaintiff Whitehead's delinquent discovery, and the Court has not previously cautioned Plaintiff Whitehead that failing to prosecute could result in dismissal.  Nor has the Court previously imposed a lesser sanction.

Accordingly, Defendants' request for summary judgment to dismiss Plaintiff Whitehead's claims is **DENIED**.  Plaintiff Whitehead is given twenty (20) days to respond to Defendants' discovery.  Plaintiff Whitehead is hereby placed on notice that further refusal to cooperate in discovery may result in dismissal of his claims with prejudice, pursuant to Federal Rule of Civil Procedure 41(b), or other appropriate sanction.

**D. Defendants' Motion to Decertify Class**

Section 216(b) allows a collective action by employees who are "similarly situated," though it leaves the term "similarly situated" undefined.  Courts across the country have reached divergent results in attempting to ascertain the meaning of "similarly situated" as used § 216(b).  See Bouaphakeo v. Tyson Foods, Inc., 564 F. Supp. 2d 870, 890-91 (N.D. Iowa 2008).  The Sixth Circuit has made clear that the "similarly situated" standard is less demanding than the standard for certification of a class under Rule 23 of the Federal Rules of Civil Procedure.  O'Brien, 575 F.3d at 584 ("While Congress could have imported the more stringent criteria for class certification under Fed. R. Civ. P. 23, it has not done so in the FLSA.") (citations omitted).

At the decertification stage, courts consider a variety of factors in determining whether plaintiffs are similarly situated, including "(1) the disparate factual and employment settings of the individual plaintiffs, such as a) job duties; b) geographic

location; c) supervision; and d) salary; (2) the various defenses available to the defendant that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." Wilks v. The Pep Boys, No. 3:02-0837, 2006 WL 2821700, at *3 (M.D. Tenn. Sept. 26, 2006) (citing White, 236 F.R.D. at 367 and Moss v. Crawford & Co., 201 F.R.D. 398, 409 (W.D. Pa. 2000)); see O'Brien, 575 F.3d at 584. Plaintiffs are not required to show a "unified policy" by the defendant in order to be similarly situated. O'Brien, 575 F.3d at 584. "Some courts employ a separate balancing test after considering these factors, while others fit the balancing test under the rubric of the 'fairness and procedural considerations' factor." Wilks, 2006 WL 2821700, at *3 (internal citations omitted). Irrespective of how the inquiry is formulated, the trial court's ultimate responsibility in considering these factors is to weigh the benefits of litigating all claims in a single proceeding against any prejudice to the defendant and any other procedural obstacles that may undermine the utility of a collective action. Id. (citations omitted); see O'Brien, 575 F.3d at 585-86. Stated otherwise, in considering decertification, "[t]he question is simply whether the differences among the plaintiffs outweigh the similarities of the practices to which they were allegedly subjected." Frye v. Baptist Mem'l Hosp., No. CIV. 07-2708-Ma, 2010 WL 3862591, at *3 (W.D. Tenn. Sept. 27, 2010) (citation omitted). "If the plaintiffs are similarly situated, the action proceeds collectively. 'If the claimants are not similarly situated,' however, 'the court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims.'" Id. (quoting Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001) (other citations omitted)).

In moving to decertify the plaintiff class, Defendants argue that the facts surrounding the claims of each individual plaintiff in the class are too different for Plaintiffs to be considered "similarly situated" for purposes of a § 216(b) collective action.  First, Defendants contend that decertification is proper because Plaintiffs do not allege that they were subjected to one uniform policy, but rather make allegations that vary depending on the supervisor and location of work.   Contrary to Defendants' assertions, however, Plaintiffs' claims rely on a series of common methods by which Defendants allegedly deprived technicians proper overtime pay regardless of location or supervisor.   Specifically, Plaintiffs have presented evidence indicating that Defendants (1) altered technicians' timesheets to eliminate or understate overtime hours; (2) directed technicians to either not report or underreport their overtime hours; and (3) discouraged the reporting of overtime by use of a piece-rate compensation system accompanied by the threat of being terminated or receiving less than a full work schedule if overtime was reported.   Plaintiffs across the class allege these same practices.   Additionally, the plaintiff class comprises cable technicians tasked with the same job responsibilities and subject to pay under the same piece-rate system.  Such a unifying set of facts and theories strongly counsels against decertification, notwithstanding certain variations in the factual circumstances of each individual plaintiff's situation.   See, e.g., Wilks, 2006 WL 2821700, at *4-6 (finding decertification inappropriate, even though there were variations in the claims presented by each individual plaintiff, because the plaintiffs offered proof that the defendant subjected them "to a common, impermissible practice in a manner that suffices to meet their burden at this decertification stage of the proceedings"); see also Moss v. Crawford & Co., 201 F.R.D. 398, 409 (W.D. Pa. 2000).

Defendants further contend that decertification is warranted because the question whether Defendants had knowledge, either actual or constructive, of Defendants' uncompensated overtime will vary depending on whether that individual plaintiff complained of not receiving proper overtime.  The Court squarely rejects this contention. So long as Defendants were generally aware—either actually or constructively—of the types of practices that Plaintiffs allege were used to deny them overtime, there is no requirement in the law to compel each member of the plaintiff class to establish that he or she individually complained of the FLSA violation.  Imposition of such a perquisite for recovery would undermine the entire collective action vehicle by requiring specific evidence where Congress has decreed that more generalized proof will suffice.  See O'Brien, 575 F.3d at 585.  Of course, nothing about allowing Plaintiffs' proof to proceed in a collective fashion precludes Defendants from presenting the proof they deem appropriate to support their position that they were unaware of any of the violations Plaintiffs allege.

Defendants likewise assert that adjudication of Plaintiffs' claims on a classwide basis is improper because the finder of fact must assess the credibility of the each plaintiff individually as to how much, if any, uncompensated overtime he or she worked. Defendants also argue that their defenses can only be raised individually.  The Court first notes that many of the purported defenses Defendants identify are clearly amenable to classwide determination.  This includes the issues of whether management knew of the methods being used to deny overtime pay and whether Defendants acted willfully, since, as stated above, showing notice of an illegal practice would surely place Defendants on notice of FLSA issues affecting more than the single individual who complained.

Defendants' other purported defenses are in effect other ways of asserting that the finder of fact must assess each plaintiff's credibility, including how many hours he or she worked, what individual supervisors knew about the alleged uncompensated overtime, and whether the overtime work was pursuant to a supervisor's instructions.  The Court finds that the use of representative testimony in a collective action will not impair Defendants' ability to effectively raise these issues.  The plaintiffs who testify will do so in a representative capacity, and the issues Defendants raise concerning the nature and extent of the plaintiffs' alleged uncompensated overtime may be broached with the testifying plaintiffs.  While it will not afford the same level of forensic specificity as cross-examination of each plaintiff individually, a collective action under § 216(b) is not held to the same rigors as either a typical lawsuit or a class action under Rule 23 precisely because the FLSA contemplates that representative testimony may be used to adjudicate the claims of nontestifying plaintiffs and thereby arrive at an approximation of damages.[10]  See O'Brien, 575 F.3d at 585; Nerland v. Caribou Coffee Co., Inc., 564 F. Supp. 2d 1010, 1024 (D. Minn. 2007) ("[A]lthough . . . [the defendant] . . . contends it has the right to defend against individualized claims on an individual basis, rather than collectively, . . . this right must be balanced with the rights of the plaintiffs—many of whom would likely be unable to bear the costs of an individual trial—to have their day in court.") (citation omitted); Wilks, 2006 WL 2821700, at *3 ("Notably, even at the decertification stage, *similarly* situated does not mean *identically* situated.") (emphasis in original); see, e.g., Takacs v. Hahn Auto. Corp., No. C-3-95-404, 1999 WL 33127976, at *1 (S.D. Ohio Jan. 25, 1999) ("[D]amages in FLSA cases may be proved with evidence

---

[10] Of course, the finder of fact at trial will only be required to set damages by the "just and reasonable inference" standard if it first finds by a preponderance of the evidence that Defendants' records are inaccurate or inadequate.

from representative employees (in other words, . . . it is not necessary that every Plaintiff testify in order to prove his or her damages.)").

Fairness and procedural considerations also strongly militate against decertification.  If not addressed as a collective action, the claims of the plaintiff class would have to be heard in individual suits—perhaps requiring more than 300 mini-trials. The investment of time and resources required for this many separate trials would render adjudication of Plaintiffs' claims so unwieldy and expensive as to substantially hinder, if not preclude, their resolution by judicial means.  Such a result is incompatible with the goals of FLSA collective actions, which include facilitating trial of claims that otherwise would be too cost-prohibitive to warrant independent litigation.  See, e.g., Nerland, 564 F. Supp. 2d at 1026 (denying decertification because, in part, it would "contravene[] the policy behind collective actions under section 216(b) of the FLSA of allowing plaintiffs to vindicate their rights with lower individual costs by pooling resources and benefitting the judicial system through efficient resolution in one proceeding of common issues of fact and law arising from the same alleged . . . activity") (internal quotation marks and citation omitted).

Therefore, the Court finds that the differences among Plaintiffs' individual claims are so not great as to predominate over the ways that their claims are similar or to outweigh the benefits of proceeding on the Plaintiffs' claims a collective action under § 216(b).  See Frye, 2010 WL 3862591, at *3; Wilks, 2006 WL 2821700, at *8. Accordingly, Defendants' motion to decertify the plaintiff class is **DENIED**.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to decertify the plaintiff class is **DENIED**. Defendants' motion for summary judgment is also **DENIED**. Plaintiff Whitehead is **ORDERED** to respond to Defendants' discovery within twenty (20) days of the date of this order. Plaintiff Whitehead is cautioned that continued failure to participate in discovery may subject his claims to dismissal under Federal Rule of Civil Procedure 41(b) for failure to prosecute. The parties are **ORDERED** to submit an amended scheduling order within fifteen (15) days specifying the number of trial days required. Thereafter, by separate order, the Clerk will set a trial date in accordance with the needs of the parties. Failure to timely abide by this order will result in the Court entering an order fixing pretrial and trial dates <u>sua</u> <u>sponte</u>.

**IT IS SO ORDERED**, this the 7th day of February, 2011.

<u>s/Bernice Bouie Donald</u>
**BERNICE BOUIE DONALD**
**UNITED STATES DISTRICT JUDGE**