# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

---

Edward Monroe, Fabian Moore,
and Timothy Williams, on behalf of themselves
and all other similarly situated employees,                    Court File No. 2:08-cv-2100

           Plaintiffs,

v.

FTS USA, LLC and
Unitek USA, LLC,

           Defendants.

---

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO PRECLUDE PLAINTIFFS FROM USING "REPRESENTATIVE PROOF" AT TRIAL

---

### INTRODUCTION

Five months after this Court flatly rejected their decertification arguments, determining that the trial in this case will be based on **representative proof** and that the Plaintiffs who testify at trial will do so in a **representative capacity**, Defendants filed the instant untimely motion for reconsideration, disguised as a motion to "preclude plaintiffs from using representative proof." Defendants' attempt at a second bite of the apple is a blatant delay tactic that should be denied for the same reasons the Court rejected Defendants' motion for decertification in the first place.

The 302 Plaintiffs in this FLSA collective allege a single claim under the Fair Labor Standards Act: that Defendants failed to compensate them for all overtime hours worked.  To prove this claim and their damages, Plaintiffs intend to present their case through representative proof consisting of approximately twenty-five (25) testifying Plaintiffs (selected from the pool of fifty (50) who were subject to the parties' stipulated agreement on representative discovery), and

various corporate and management witnesses. As outlined below, and as the case law confirms, this trial plan is fair to both parties and comports with the collective action mechanism's purpose—to permit those "similarly situated" to pool resources and pursue claims together.

As Plaintiffs are similarly situated and representative testimony is appropriate, this Court should promptly deny Defendants' motion so the parties may focus their resources on preparing for the September 19 trial rather than rehashing arguments on this previously-decided issue.

### SUMMARY OF PROCEDURAL AND FACTUAL BACKGROUND

**A.    Defendants Agreed to Representative Proof at Trial.**

This FLSA collective action, alleging that Defendants violated the FLSA by failing to pay Plaintiffs for all overtime hours worked, was filed on February 14, 2008. (ECF No. 1.) Although Defendants conducted little to no discovery during the first two years of litigation, Defendants acknowledged that a trial in this case would be based on representative poof and that both parties would be selecting a certain number of testifying Plaintiffs. (Srey Aff. ¶¶ 4-7.) Shortly before the December 14, 2009 discovery deadline, the parties reached an agreement to conduct discovery on a representative basis and agreed that:

1) Discovery would be limited to a representative sample of fifty (50) opt-in Plaintiffs;
2) Plaintiffs would select 40 of the 50 to be included in the sample and Defendants would select 10;[1]
3) Plaintiffs would not, at that time, designate the number of Plaintiffs from the pool of 50 who would testify at trial; and
4) After discovery closes, the parties would work together and approach the Court about a trial plan that consists of trying the case on representative proof. ***The trial plan would propose a certain number of Plaintiffs from this pool of 50 who Plaintiffs may call as witnesses.***

---

[1] Defendants selected opt-in Plaintiffs Robert Baker, Tyrus Boone, Robert Gagnon, Even Gary, Ben Kurktchiyski, David Lighty, Prince Nix, Matthew Queen, Timothy Vannati, and Chris Whitehead.

(Id. ¶ 11; Ex. F.) (emphasis added).  Based on these terms, the parties agreed to extend the discovery deadline to March 1, 2010 in order to conduct and obtain discovery for the 50 representative Plaintiffs.   (Id. ¶ 10.)   At **no point in time** during these negotiations did Defendants ever object to a sample size of 50, or contend that the 50 were not fairly "representative" of the collective.   Indeed, Defendants never claimed that the 50 Plaintiffs selected were not sufficiently diverse in any way.  (Id. ¶ 11.)  Defendants, though given an opportunity to depose all 50 representative Plaintiffs, chose to depose only sixteen.  (Id. ¶ 12.) Plaintiffs provided written discovery responses for 49 of the 50 representative Plaintiffs.[2]  (Id.)

**B.**     **The Court Has Already Rejected Defendants' Arguments Against Representative Proof.**

Defendants filed their motion for decertification on April 1, 2010, arguing that "[b]ecause Plaintiffs here are not similarly situated, collective treatment is not proper."  (ECF No. 193 at 3.) Plaintiffs' opposition argued that collective treatment at trial was appropriate because Plaintiffs not only share common factual and employment settings, job duties, and a uniform compensation system, but also assert the same claim against Defendants: that Defendants failed to compensate them for all overtime hours worked in violation of the FLSA.  (ECF No. 200.)

In reply, Defendants criticized Plaintiffs for not submitting a trial plan.  (ECF No. 206.) The parties subsequently held a telephone conference with the Court on June 9, 2010, in which the Court stated that it was going to issue an Order striking the initially-scheduled July 16, 2010 trial date because of Defendants' pending motion for summary judgment[3] and motion for decertification.  (ECF Nos. 210 and 211.)  During this conference, Plaintiffs requested and were

---

[2] Since this time, Plaintiff Christopher Whitehead has produced his discovery responses.

[3] Defendants' Motion for Summary Judgment was filed at the same time as their decertification motion.  (See ECF No. 194.)

granted permission to submit a proposed trial plan.  (ECF No. 230.)   Plaintiffs submitted their proposed trial plan on July 20, 2010.  (Id.)   Given the significant overlap between liability (i.e. whether Plaintiffs worked uncompensated overtime hours) and damages (i.e. how many uncompensated hours Plaintiffs worked), Plaintiffs proposed a trial plan consisting of representative testimony for both liability and damages.  (Id.)  Despite having the opportunity to do so, Defendants never responded to Plaintiffs' proposed trial plan.

On February 7, 2011, this Court issued an Order denying Defendants' motion for decertification, concluding:

> Plaintiffs have demonstrated that this case is appropriate for trial on **representational proof**.  Plaintiffs' evidence, if credited, establishes that Defendants violated the FLSA with respect to all members of the class, which means that, if the finder of fact agrees with Plaintiffs that violations occurred, then the factfinder will be tasked with setting Plaintiffs' damages.

(ECF No. 238 at 16-17 (emphasis added).)[4]  Following the Sixth Circuit's guidance in O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 584 (6th Cir. 2009), the Court determined that to be "similarly situated," Plaintiffs were not required to show a "unified policy" and that "[c]ontrary to Defendants' assertions . . . Plaintiffs' claims rely on a series of common methods by which Defendants allegedly deprived technicians of proper overtime pay regardless of location or supervisor."  (ECF No. 238 at 25.)   According to the Court, the evidence indicated that Defendants: (1) altered technicians' timesheets to eliminate or understate overtime hours; (2) directed technicians to either not report or underreport overtime hours; and (3) discouraged the reporting of overtime by use of a piece-rate compensation system accompanied by the threat of

---

[4] This Order also denied Defendants' Motion for Summary Judgment.  (ECF No. 238.)  Notably, the Court agreed with Plaintiffs that Defendants' motion for summary judgment was in tension with their motion for decertification "since one seeks to conclude on a classwide basis while the other argued that classwide adjudication is improper."  (See id. at n.6.)

being terminated or receiving less than a full work schedule if overtime was reported.  (Id.)

Relying on the discovery of the 50 representative Plaintiffs, the Court noted, "Plaintiffs across the class allege the same practices,"[5] and that the class comprised of technicians who performed the same job responsibilities and were subject to the same pay under the same piece rate system."  (Id.)  "Such a unifying set of facts and theories strongly counsels against decertification, notwithstanding certain variations in the factual circumstances of each individual plaintiff's situation."  (Id. (citation omitted)).  Although addressed in the context of Defendants' motion for summary judgment, the Court specifically rejected Defendants' contention that the claims the opt-in Plaintiffs who were not subject to representative discovery should fail because the record contains no evidence that these Plaintiffs worked uncompensated overtime.  (Id. at 16.)  The Court stated: "the Court cannot accept Defendants' contention that the parties' stipulated agreement to limit discovery to fifty representative plaintiffs did not also manifest Defendants' acquiescence to a process by which **the remaining members of the class would not have to produce evidence as a prerequisite to proceeding to trial on their claims**."  (Id. (emphasis added).)

As to due process rights and fairness, the Court concluded that the use of representative proof in a collective action will not impair or unfairly prejudice Defendants' ability to effectively raise their various defenses and arguments and that Defendants may broach any issues concerning the nature and extent of uncompensated overtime with the testifying Plaintiffs who will testify in a representative capacity.  (Id. at 27.)  "While [representative testimony] will not

---

[5] Defendants' motion criticizes the Court for making this statement and urges this Court to reconsider based on Plaintiffs' "admissions."  (Defs.' Br. at 8, n.1.)  The Court was correct. Plaintiffs across the class—not just the named Plaintiffs but also other opt-in Plaintiffs who worked in different locations and under different supervisors—allege that they were subject to these same practices.  (ECF No. 238 at 25.)

afford the same level of forensic specificity as cross-examination of each plaintiff individually, a collective action under § 216(b) is not held to the same rigors as either a typical lawsuit or a class action under Rule 23[6] precisely because the FLSA contemplates that representative testimony may be used to adjudicate the claims of nontestifying plaintiffs and thereby arrive at an approximation of damages." (Id. (citation omitted)). Finally, the Court reasoned that 300 "mini-trials" would be incompatible with the goals of FLSA collective actions. (Id. at 28.)

Five months after this Court issued its decision to proceed with a representative proof trial, Defendants filed the instant motion to preclude Plaintiffs from presenting their FLSA overtime claims by representative proof. For the same reasons the Court adopted in denying Defendants' decertification motion, the Court should deny this motion.

## ARGUMENT

As a preliminary matter, Defendants' motion is nothing more than an untimely motion for reconsideration. Indeed, while disguised as something new, central to Defendants' motion is not their disagreement with Plaintiffs' proposed trial plan, but rather their disagreement with the Court's Order denying Defendants' motion for decertification. (ECF No. 238.) The parties fully briefed whether representative testimony at trial is appropriate more than a year ago, and the Court concluded that Plaintiffs had met their burden of establishing the propriety of representative proof. (Id.)

As Defendants' seek the same relief that they sought in their motion to decertify, the Court should analyze the instant motion under the same standard utilized for a typical motion for

---

[6] Despite the Court's adoption of the Sixth Circuit's direction that the "similarly situated" standard is less demanding than the standard for certification of a Rule 23 class, Defendants' motion cites Wal-Mart Stores, Inc. v. Dukes, 564 U.S. ___, 2011 WL 2437013 (June 20, 2011) and argues for "commonality" and Bell v. Addus Healthcare, Inc., 2007 WL 3012507 (W.D. Wash. Oct. 12, 2007). These cases are clearly distinguishable.

reconsideration.  As no Federal Rule permits a motion to reconsider, courts generally and the

Western District of Tennessee specifically consider such motions under a Rule 59(e) standard:[7]

> The purpose of a motion to alter or amend judgment under Fed. R. Civ. P. 59(e) is
> to have the court reconsider matters properly encompassed in a decision on the
> merits. This rule gives the district court the power to rectify its own mistakes . . .
> Generally, three situations justify a district court altering or amending its
> judgment: (1) to accommodate an intervening change in controlling law; (2) to
> account for new evidence not available at trial; or (3) to correct a clear error of
> law or to prevent a manifest injustice. It is not designed to give an unhappy
> litigant an opportunity to relitigate matters already decided, nor is it a substitute
> for appeal.  Sherwood v. Royal Ins. Co. of Am., 290 F. Supp. 2d 856, 858 (N.D.
> Ohio 2003) (internal citations and quotation marks omitted). Rule 59(e) motions
> are designed for reconsideration, not initial consideration. Johnson v. Henderson,
> 229 F. Supp. 2d 793, 796 (N.D. Ohio 2002).

Newsome v. Northwest Airlines Corp., 2005 WL 1017991, at *1 (W.D. Tenn. Apr. 28, 2005).

As noted more extensively below, none of these situations that would justify reconsideration are

present.  Since the initial motion, nothing has changed, and Defendants' excuses for filing the

instant motion have already been rejected and still do not justify decertification.   Thus,

Defendants' motion should be denied.

Even if the Court considered Defendants' motion timely, the Court's original decision

should not be altered because it was correct.  The evidence establishes that Plaintiffs are

similarly situated in that they all allege that they worked uncompensated overtime hours in

violation of the FLSA and that this violation occurred for three reasons that are shared by

Plaintiffs regardless of where, when, or under whom they worked.   Further, the use of

representative proof is not an "abstract notion" as Defendants contend, but rather a well-

established method for proving liability and damages in FLSA collective actions where the

plaintiffs are similarly situated as they are here.  Defendants' arguments and the cases upon

---

[7] Rule 59(e) requires that a "motion to alter or amend a judgment must be filed no later than 28
days after entry of the judgment."

which they rely do nothing to undermine the utility or propriety of representative proof.

**A.      REPRESENTATIVE PROOF AT TRIAL IS APPROPRIATE.**

An action under the FLSA may be maintained against "any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees **similarly situated**." 29 U.S.C. § 216(b) (emphasis added).  As this Court recognized, "similarly situated" is undefined, and irrespective of what factors courts consider in deciding whether a group of plaintiffs are "similarly situated" to proceed collectively to trial, the "trial court's ultimate responsibility in considering these factors is to weigh the benefits of litigating all claims in a single proceeding against any prejudice to the defendant and any other procedural obstacles that my undermine the utility of a collective action."  (ECF No. 238 at 24 (citation omitted).)

**1.      _O'Brien_ Approves the Use of Representative Proof Where Plaintiffs are Similarly Situated as this Court has Found They are Here.**

Despite the Court's decision, Defendants—relying on an incorrect reading of O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567 (6th Cir. 2009)—now claim that **each** of the 302 opt-in Plaintiffs is required to testify at trial to prove liability, and that each is required to assert all three reasons for why they were not compensated for all of their overtime hours in order to proceed to trial based on representative proof.  Specifically, Defendants' brief states, "[i]ndeed, in O'Brien, the Sixth Circuit held that **each** 'FLSA plaintiff must prove by a preponderance of evidence that he or she performed work for which he or she was not properly compensated (in other words, that each plaintiff must prove liability."  (Id. at 15 (emphasis added)).  O'Brien provides no support for Defendants' position.

O'Brien did not hold that each opt-in plaintiff must testify to prove liability.  In fact, O'Brien's stated just the opposite.  Indeed, the district court had noted that "to determine whether a particular violation of the FLSA took place in the case requires an individualized

analysis that examines the facts of each alleged violation." Id. at 584. O'Brien specifically disagreed with the district court's similarly situated analysis because it applied a more stringent standard than statutorily required. Id. at 584-85 ("Under the FLSA, opt-in plaintiffs only need to be 'similarly situated.' While Congress could have imported a more stringent criteria for class certification under Fed. R. Civ. P. 23, it has not done so in the FLSA."). O'Brien recognized that representative testimony from a subset of plaintiffs could be used to **facilitate the presentation of proof of FLSA violations** (i.e. liability) when such proof would ordinarily be individualized. Id. (citing Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1263-65, 1279-80 (11th Cir. 2008)).[8] In other words, if the collective is similarly situated and share a common claim that they worked uncompensated overtime hours, each opt-in plaintiff is not required to present evidence of precisely why or how the defendant failed to pay him overtime in order for the testifying plaintiffs' testimony to be extrapolated to the non-testifying plaintiffs.

Similarly, O'Brien did not affirm decertification because the individual plaintiffs did not allege **all** theories of liability as Defendants contend. (Defs.' Br. at 2). Rather in O'Brien, the Sixth Circuit ultimately affirmed the decertification decision because there were no plaintiffs remaining who alleged suffering from **either** of the commonly alleged unlawful practices. 575 F.3d at 586. To explain, in O'Brien, the plaintiffs alleged two common ways in which their employer had violated the FLSA: 1) by requiring the plaintiffs to work off-the-clock, and 2) by improperly editing employees' time punches, reducing the hours plaintiffs were paid. 575 F.3d

---

[8] Similar arguments were rejected in Kautsch v. Premier Comm., 2008 WL 294271, at *4 (W.D. Mo. Jan 31, 2008), a case involving technicians paid by piece rate. 2008 WL 294271, at *1. There, some of the plaintiffs were instructed by their managers to not record all of their hours worked while others were not. Id. at *3. In denying decertification, the court acknowledged that not every plaintiff of the 743 technicians needed to be told that overtime was forbidden to proceed collectively to trial. Id.

at 584.  **No** plaintiff alleged that they were either required to perform work off-the-clock or that the employer edited their time records.  In contrast, here, Plaintiffs across the class have alleged the three common ways in Defendants failed to pay them for all overtime worked.  (See *supra* p. 3.)  According to O'Brien's analysis, this is amply sufficient to withstand a challenge against representative proof.  575 F.3d at 584-85.  Under Defendants' reading of O'Brien, however, Plaintiffs need be identical rather than simply "similarly situated."  This is flatly wrong.  As O'Brien and this Court have recognized, "[e]ven at the decertification stage, similarly situated does not mean identically situated."  (ECF No. 238 at 27); accord O'Brien, 575 F.3d at 584 (citing Grayson v. K Mart Corp., 79 F.3d 1086, 1095 (11th Cir. 1996)) (concluding that although the plaintiffs bear the burden to show that they are similarly situated to the opt-in plaintiffs, plaintiffs are not required to show a "unified policy" of violations).

Again, here, representative discovery consisting of 50 representative Plaintiffs (10 of whom Defendants handpicked) proves that the Plaintiffs are in fact similarly situated and that Defendants' FLSA violations are widespread, and not simply isolated to the named Plaintiffs.[9] Examining this evidentiary record, the Court concluded that "Plaintiffs' evidence, if credited, establishes that Defendants violated the FLSA with respect to all members of the class, which means that, if the finder of fact agrees with Plaintiffs that FLSA violations occurred, then the factfinder will be tasked with setting Plaintiffs' damages."  (ECF No. 238 at 17.)  The Court found that Plaintiffs' claim of uncompensated overtime hours was unified because of similarities in the common methods by which Defendants allegedly deprived Plaintiffs of their overtime pay,

---

[9] Despite Defendants' repeated suggestions otherwise, Plaintiffs have never contended that representative proof is appropriate in **all** FLSA collective actions.  Representative proof and class-wide adjudication of FLSA claims is, however, proper when the named and opt-in Plaintiffs are similarly situated, as they are and were found to be in this case.

and the similarities in Plaintiffs' job duties and manner of compensation.   (Id. at 25.)

Therefore, while Defendants may offer a perverse reading of relevant case law and claim that Plaintiffs "created," "crafted," "manufactured," or whatever other verb Defendants use to describe how the FLSA violations occurred, this Court—consistent with the standards enunciated by the Sixth Circuit and other courts—has already decided that Plaintiffs were sufficiently similarly situated regardless of whether they worked  under various managers, at different locations, or during different employment periods.  In sum, this Court correctly concluded that representative proof for liability and damages is appropriate in this case and its decision should not be overturned.

### 2.    Representative Proof is Consistent with Case Law and the U.S. Department of Labor's Traditional Method of Proving FLSA Violations and Damages.

Defendants curiously claim that representative proof is an "abstract notion" and that this case is somehow different than other FLSA collective actions in which representative proof has been found to be appropriate because this case involves "varying reactions to otherwise lawful employment policies" and that even if a jury could decide liability for the testifying plaintiffs they could not decide liability for the non-testifying Plaintiffs.  (Defs.' Br. at 2, 6.)   Defendants are wrong.

First, representative proof in FLSA collective actions in which the named and opt-in Plaintiffs are similarly situated (as they are here) is far from an "abstract notion."  Indeed, as discussed above, relying on binding precedent, this Court has already recognized that representative proof is appropriate for both liability and damages.  (ECF No. 238 at 16 ("The Sixth Circuit has expressly recognized that "it is possible that representative testimony from a subset of plaintiffs could be used to facilitate the ***presentation of proof of FLSA violations***, when such proof would ordinarily be individualized,") (citing O'Brien, 575 F.3d at 585), and that

"[t]he testimony of fairly representative employees may be the basis for an award of back wages to nontestifying employees," U.S. Dep't of Labor v. Cole Enters., Inc., 62 F.3d 775, 781 (6th Cir. 1995) (citations omitted). (emphasis added).

Beyond this Circuit, other circuit and district court cases have adopted the use of representative proof for liability and damages purposes. See, e.g., Morgan v. Family Dollar, 551 F.3d 1233, 1278-79 (11th Cir. 2008) (concluding that the general rule is that not all employees have to testify to prove overtime violations) cert denied, 130 S. Ct. 59 (2009); Reich v. S. New England Telecomms. Corp., 121 F.3d 58 (2d Cir. 1997) ("it is well-established that the Secretary may present the testimony of a representative sample of employees as part of his proof of the prima facie case under the FLSA"); Martin v. Selker Bros., Inc., 949 F.2d 1286, 1298 (3d Cir. 1991) ("It is not necessary for every single employee to testify in order to prove violations or recoup back wages. The testimony and evidence of representative employees may establish prima facie proof of a pattern and practice of FLSA violations."); McLaughlin v. Ho Fat Seto, 850 F.2d 586, 589 (9th Cir. 1988) (finding that the non-testifying employees established a prima facie case that they had worked unreported hours through the testimony of five plaintiffs);[10] Donovan v. Bel-Loc Finer, 780 F.2d 1113, 1116 (4th Cir. 1985) (recognizing that requiring each plaintiff to testify would thwart the purposes of the sort of representational testimony clearly contemplated by Mt. Clemens Pottery); see also Stillman v. Staples, Inc., 2009 WL 1437817

---

[10] Like this case, the plaintiffs in Ho Fat Seto asserted off-the-clock overtime claims. The Secretary of Labor presented five witnesses whose testimony varied. 850 F.3d at 588. For example, while all five witnesses testified that they were required to work off-the-clock before the start of their shift and on Saturdays, only three employees stated that they worked off-the-clock at the end of their shift and four employees testified that the defendant misrepresented the hours actually worked in a given week to artificially comply the FLSA. Id. Based on the testimony of these five plaintiffs, the Ninth Circuit concluded that "all Seto's employees regularly worked over forty hours per week. The twenty-three non-testifying employees established a prima facie case that they worked unreported hours." Id. at 589.

(D.N.J. May 15, 2009) (finding FLSA violations and awarding back wages based on representative proof).

A representative trial of Plaintiffs' FLSA claims is also consistent with the Department of Labor's position on representative proof at trial. In <u>Baden-Winterwood v. Life Time Fitness, Inc.</u>, Case Nos. 10-4269/10-4361 (6th Cir. Mar. 3, 2011), the Secretary of Labor of the U.S. Department of Labor submitted an amicus brief, urging the Sixth Circuit to adopt the district court's determination to award damages in an FLSA collective action based on representative proof. (Ex. A.) While the only issue for the Secretary was whether the plaintiffs' testimony was fairly representative of the non-testifying plaintiffs to prove damages, the Secretary specifically acknowledged that in an FLSA action, the plaintiffs' burden of proof may be met through representative proof, and that it is "not necessary for all affected employees to testify at trial in order to **prove FLSA violations or to recover back wages**." (<u>Id.</u> at 14) (emphasis added). According to the Secretary, "in evaluating the adequacy of such testimony, courts focus on whether the testimony is "fairly representative" of the larger group of employees for whom back wages are being sought, including whether the job duties of the testifying employees are substantially similar to those performed by the non-testifying employees." (<u>Id.</u> at 15) (citing <u>Morgan</u>, 551 F.3d at 1279-80; <u>Sec'y of Labor v. DeSisto, 929 F.2d 789, 793 (1st Cir. 1991); Ho Fat Seto</u>, 850 F.2d at 589). Significantly, the Sixth Circuit recognizes that an amicus brief submitted by the Secretary of the Department of Labor is to be accepted as persuasive authority. <u>Beck v. City of Cleveland</u>, 390 F.3d 912, 920 (6th Cir. 2004).

Second, contrary to Defendants' suggestion, this case is no different from other FLSA "off-the-clock" cases in which representative proof has been permitted even when the defendant has a formal written policy to pay overtime but the company culture or actual policy is to

disregard that written policy as a matter of course.  See, e.g., Wilks v. The Pep Boys, 2006 WL 2821700, at *5 (M.D. Tenn. Sept. 26, 2006) (denying decertification in an off-the-clock case because each of the plaintiffs asserted a common claim, i.e. that they were not compensated for all of their hours worked, and proffered significant evidence that an illegal practice existed despite the employer's written policy guaranteeing overtime); Falcon v. Starbucks Corp., 580 F. Supp. 2d 528, 536-37 (S.D. Tex. 2008) (ordering plaintiffs with off-the-clock claims to proceed collectively to trial even though defendant's written policy was to pay for time worked because all plaintiffs alleged they were not compensated for duties they performed over forty hours).  In short, a facially legal policy does not win the day for a defendant whose practices blatantly violate the law, as Defendants' do here.[11]

### 3. "Representative" Proof is Not Required to Be Statistically or Scientifically Significant.

Defendants also claim that the presentation of representative proof needs to be statistically or scientifically significant, and that without an expert, the parties' due process and FLSA rights are violated.  (Id. at 8.)  Defendants are wrong.  The case law confirms, where the named and opt-in Plaintiffs are in fact similarly situated, "representative" proof rather than scientific or statistically significant proof is sufficient.  Indeed, "there [is] no legal requirement that the group of testifying plaintiffs reflect a statistically significant sample for the jury to

---

[11] If Defendants' arguments were to prevail, then collective actions for off-the-clock claims could not exist because presumably no company is unwise enough to put in writing that its company policy is to violate the law.  See Hoffman v. Securitas Sec. Servs., 2008 WL 5054684, at *8 (D. Idaho Aug. 27, 2008) (a written policy that complies on its face with the FLSA is not dispositive on the issue of conditional certification, otherwise any entity with a compliant policy could prevent a collective action by citing the policy itself); Beauperthuy v. 24 Hour Fitness USA, Inc., 2008 WL 793838, at *4 (N.D. Cal. Mar. 24, 2008) (defendants' handbook citing proper compensation practices cannot immunize it against a collective action when there is substantial evidence that they did not follow their own guidelines).

consider their testimony and render conclusions.  The number who testified is only one factor." Stillman v. Staples, Inc., 2009 WL 1437817, at *20.  Indeed, courts generally look to the quality, not the quantity of the representative testimony as a whole to see whether it is fairly representative.  See, e.g., Morgan, 551 F.3d at 1279-1280.  To determine the adequacy of the representative testimony, this Court may consider: 1) the ratio of the number of testifying employees to the number of employee for whom back wages are claim; 2) the nature of the work involved (and how varied it is); 3) working conditions and relationships; and 4) the detail and credibility of the testimony. See Takacs v. Hahn Auto. Corp., 1999 WL 33127976, at *2 (S.D. Ohio Jan. 25, 1999) (citing DeSisto, 929 F.2d at 793 ("it is axiomatic that the weight to be accorded evidence is a function not of quantity but of quality")).  Generally, the testimony of an employee is representative of others who perform substantially similar work.  Donovan v. Burger King Corp., 672 F.2d 221, 225 (1st Cir. 1982) (6 of 246 testified where the parties agreed that the assistant managers performed substantially similar work).

Because there is no fixed ratio or bright line standard as to the number or percentage of representative employees that must testify, courts have varied greatly on the number of plaintiffs that must testify in order to be "representative" of non-testifying plaintiffs.  See, e.g., Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 683-84 (1946) (8 out of 300 employees testified); Morgan, 551 F.3d at 1276 (7 out of over 1400 plaintiffs testified at trial); New England Telecomms., 121 F.3d at 66-69 (finding that the testimony of 39 employees who accounted for each of the five job categories in question sufficient to support an award for all 1500 plaintiffs); Ho Fat Seto, 850 F.2d at 589 (5 of 28 testified and proved liability and damages); Stillman, 2009 WL 1437817, at *2 (discussing jury's verdict for plaintiffs based on testimony of 13 representative employees who established liability and damages for 342 sales managers).

Here, as this Court has held, the evidence from the 50 Plaintiffs subject to discovery was sufficiently representative of the collective and therefore, Plaintiffs who will testify at trial will do so in their representative capacity.  (<u>See</u> *supra* p. 5.)[12]  Additionally, because representivity is not based on statistics or science, no expert is needed to extrapolate testimony from the testifying plaintiffs to the non-testifying plaintiffs.  Instead, because Plaintiffs are **<u>in fact</u>** similarly situated regardless of location, supervisor, no expert is need to testify about whether Plaintiffs are sufficiently similarly situated for the representative proof to be sufficiently representative.  After hearing the representative evidence, the jury will be asked to decide whether Plaintiffs have established that they worked more than 40 hours in a workweek for which Defendants knew or should have known they were not compensated.  If the answer to this question is answered in the affirmative, then the jury has determined liability for not only the testifying Plaintiffs, but also for the entire class, and may award damages to the group as whole.

### 4.    Defendants' Cited Cases Do Not Justify Decertification.

The decisions upon which Defendants rely do not undermine Plaintiffs' trial plan.  Indeed, Defendants' main case, <u>Espenscheid v. DirectSat USA, LLC</u>, No. 09-625 (W.D. Wis., May 23, 2011) (ECF No. 246-2), and their other cases are distinguishable.

---

[12] As discussed further below, Defendants' motion relies heavily on <u>Espenscheid v. DirectSat USA, LLC</u>, No. 09-625 (W.D. Wis. May 23, 2011).  To the extent that the court's decision in <u>Espenscheid</u> is inconsistent with this position, the decision is wrong.  Notably, the <u>Espenscheid</u> plaintiffs have petitioned for appeal of the court's decertification order.  The petition is currently pending before the Seventh Circuit.  <u>See</u> <u>Espenscheid v. DirectSat USA, LLC</u>, No. 11-8015, ECF No. 1-1 (7th Cir. *filed* June 6, 2011).  Regardless, the <u>Espenscheid</u> plaintiffs are proposing that less than 2% of the class testify—a marked difference from the nearly 10% proposed in this case. (<u>See</u> ECF No. 230); <u>but see</u> <u>Reich v. S. New England Telecomms. Corp.</u>, 121 F.3d 58, 66-69 (2d Cir. 1997) (finding the testimony of less than 3% of employees sufficient to support an award for all plaintiffs/opt-ins and stating, "It is axiomatic that the weight to be accorded evidence is a function not of quantity but of quality" and that "a very small sample of representational evidence can suffice.").

Espenscheid, from its inception, was litigated with a focus on a multitude of different **tasks** for which the plaintiffs claimed they were not paid.  See Espenscheid Compl. at ¶ 14 (alleging 14 unpaid tasks); Espenscheid Amend. Compl. at ¶ 20 (pleading subclasses); see also Espenscheid Cond. Cert. Mem. (addressing subclasses and different unpaid tasks).  Seizing on these facts, the Espenscheid court created **twelve** different subclasses, three under the FLSA,[13] requiring that each be addressed in plaintiffs' trial plan.  When plaintiffs failed to do so, the collective and classes were decertified.  (See ECF No. 246-2.)

In contrast, here, there is no task-based dispute or dispute about Plaintiffs' job duties and responsibilities.  (Compare ECF No. 193-1 with ECF No. 200 at 5 (parties agreeing as to technicians' job duties).)[14]  This case is not about each specific task that a plaintiff may or may not have been paid for.  Nor does this case involve divergent testimony on the ways in which Defendants chose to execute their illegal and uniform policy of nonpayment.  Rather, this case is about the common claim asserted by each and every Plaintiff, i.e., that Defendants failed to compensate him for all overtime hours worked in violation of the FLSA.  Indeed, this Court, in denying Defendants' motion for decertification—without the need to impose subclasses—noted, "Plaintiffs across the class alleged [the] same practices[,]" to wit: that their timesheets were altered or completed by someone else, that they were instructed not to record all hours worked,

---

[13]  The Espenscheid plaintiffs certified Rule 23 class under Wisconsin, Minnesota, and Pennsylvania state laws and nine subclasses were created under those Rule 23 classes.

[14]  This, too, is why Johnson v. Big Lots Stores, Inc., 561 F.Supp.2d 567, (E.D. La. 2008). is inapposite.  Johnson was an exemption misclassification where job duties were very much at issue.  Id. at 574-75.  Similarly, in Reed v. County of Orange, there were "claims for as many as thirty different sorts of pre-shift activities and at least twenty-five assorted post-shift activities." 266 F.R.D. 446, 453 (C.D. Cal. 2010).  Here, in contrast, Plaintiffs are indisputably non-exempt employees that all have the exact same job duties.  (See ECF No. 238 (denying decertification and stating that class members are "tasked with the same job responsibilities and subject to… the same piece-rate system.").)

and that they were discouraged from reporting overtime by the use of threats of termination or less work.  (ECF No. 238 at 25.)  The Espenscheid plaintiffs, on the other hand, exhibited no such similarity.  (Compare ECF No. 246-2 ("Given the wide variability and inconsistencies in technician testimony, it would be difficult for a jury to determine what experiences are representative of the entire group of technicians at issue….") with ECF No. 200 (citing common testimony and discovery from the 50 individuals Defendants agreed would be representative).[15])[16]

As to White v. Baptist Mem'l Health Care Corp., 2011 WL 1883959 (W.D. Tenn. May 17, 2011), Defendants incorrectly attribute a language from the Southern District of Texas to this District.  (See Defs.' Br. at 6 (conflating White and Roussell v. Brinker Int'l, 2008 WL 2714079 (S.D. Tex. July 9, 2008).)  Regardless, Roussell's proposition that "the use of representative testimony is justified only where it is reasonable to believe that the testifying witnesses' experiences are sufficiently similar to those of the rest of the non-testifying plaintiffs" does

---

[15] In this way, too, Defendants' reliance on Proctor v. Allsups Convenience Stores, Inc., 250 F.R.D. 278, 282 (N.D. Tex. 2008) is misplaced.  In Proctor, a full ten percent of the plaintiffs who were deposed testified that they did not work off-the-clock.  The facts of this case are strikingly different.  (See ECF No. 200.)

[16] Further, the Espenscheid court and defendants voiced considerable concern over individual plaintiffs receiving back wages that may have already been paid by the defendant.  (ECF No. 246-2 at 13); Espenscheid Br. at ECF No. 618.  Here, on the other hand, Plaintiffs are not seeking double recovery.  After the jury determines liability, Plaintiffs' damages may be calculated using Defendants' own electronic payroll records.  Determining overtime pay owed would be a matter of simple math.  Notably, in Lugo v. Farmer's Pride, Inc., cited by Defendants, the court explicitly acknowledged that where "the only material difference among plaintiffs is the amount of damages owed to each of them, [that] is generally considered insufficient to deny class treatment."  737 F. Supp. 2d 291, 303 (E.D. Pa. 2010).  Lugo is otherwise distinguishable in that it involved donning and doffing claims where the gear to be donned and doffed and time allotted to don and doff varied across the collective.  Here, there is no question as to whether Defendants provided Plaintiffs time to do anything—the question is simply whether Defendants paid Plaintiffs for all overtime hours worked.  The resounding and uniform answer, based on the representative discovery stipulated to and undertaken in this case, is that Defendants did not.

nothing to undermine the propriety of certification here.  As this Court has already held, there is a "unifying set of facts and theories [that] strongly counsel[] against decertification."  (ECF No. 238 at 25.)[17]

White, itself, is inapposite.  There, the named plaintiff's claims were dismissed, making her decidedly dissimilar from the opt-in plaintiffs.  2011 WL 1883959, at * 5.  Further, in White, this District explicitly distinguished the instant case.  Id. at * 13 ("**Unlike** O'Brien [and] **Monroe** ... the record does not contain substantial evidence that the Opt-in Plaintiffs are similarly situated.") (emphasis added).[18]  Indeed, as this District in White and this Court in denying Defendants' motion for decertification, have acknowledged, this case is one in which the use of representative testimony and evidence at trial is entirely appropriate.

## B.       PLAINTIFFS' TRIAL PLAN IS FAIR AND CONSISTENT WITH THE FLSA.

In light of the above, Defendants' suggestion that 300 individual mini trials is more consistent, fair, and better suited to "uphold the statutory parameters of Section 216(b), than a

---

[17] Beyond that, Roussell is distinguishable in that it focuses on the unique concept of whether each class member voluntarily pooled his tips or whether each class member was coerced into doing so.  2008 WL 2714079, at *22-23.  Unlike tip pooling, the FLSA's overtime requirements, cannot be waived through acquiescence.  See Imars v. Contractors Mfg. Serv., Inc., 1998 WL 598778, at *5 (6th Cir. Aug. 24, 1998) ("Even if employees freely *want* to work… long hours without extra compensation…the FLSA does not allow this.") (emphasis in original).

[18] The other cases on which Defendants rely are equally distinguishable.  In Sec'y of Labor v. DeSisto, 929 F.2d 789 (1st Cir. 1991), testimony from only one employee was proposed to represent 244 other employees holding a variety of positions.  This case, in contrast involves a single position and testimony from nearly 10% of the collective.  Reich v. S. Maryland Hosp., 43 F.3d 949 (4th Cir. 1995) is also markedly different in that it involved testimony of less than 2% of the collective.  Finally, Defendants' reliance on Zivali v. AT&T Mobility, 2011 WL 1815391 (S.D.N.Y. May 12, 2011) is misplaced, as that case involves "highly individualized situations" involving whether emails and text messages were sent/received pre-and post-shift and varying electronic data captured in defendants' time-clock system.  These issues are not present here.  The other cases cited by Defendants are distinguishable now for the same reasons they were when Defendants initially moved for decertification.  (See ECF No. 200 at n.8.)

single trial consisting of Plaintiffs testifying in their representative capacity is unfair to Plaintiffs, and inconsistent with the FLSA's broad remedial goal and its endorsement of representative actions involving similarly situated individuals.  29 U.S.C. § 216(b); Kautsch, 2008 WL 294271, at *4 (refusing to decertify the case into 743 individual trials because "separate trials is the worst possible outcome in terms of efficiency" and puts the plaintiffs back at square one without the benefit of pooling resources to resolve the common question of whether the defendant had a policy to deny overtime and minimum wages); Wilks, 2006 WL 2821700, at *8 (citing Dunlop v. Carriage Carpet Co., 548 F.2d 139, 143-44 (6th Cir. 1977)) ("[T]he court's decision to allow the plaintiffs to proceed collectively is in line with Congress's determination that defendant will not always have the opportunity to pursue individual defenses against FLSA plaintiffs, but instead, must collectively defend a suit that is so pursued.").

On the other hand, Plaintiffs' trial plan is imminently fair and reasonable.  At trial, Plaintiffs intend to present the testimony of 25 testifying representative Plaintiffs.  These testifying Plaintiffs will represent various geographic locations, managers, and periods of employment.  Plaintiffs intend to select their 25 testifying Plaintiffs from the pool of 50 Plaintiffs subject to representative discovery. As such, Defendants cannot claim any unfairness or prejudice because they had full access to these 50 Plaintiffs.  In addition to these 25 Plaintiffs, Plaintiffs intend to call several managers and corporate witnesses in their case-in-chief.

If after hearing testimony from Plaintiffs' witnesses, this Court determines that Plaintiffs have not presented sufficient evidence in order for the jury to decide liability and damages for the collective, then the Court can exercise its authority to manage the trial (Fed. Evid. R. 611(c)), and require Plaintiffs to present more evidence.  Likewise, if after hearing a number of Plaintiffs testify, the Court decides that testimony from all 25 Plaintiffs is unnecessary, or are becoming

cumulative, duplicative, or otherwise a waste of the jury's time (See Fed. R. Evid. 403), the Court could just as easily exercise its discretion under the Federal Rules of Evidence and stop Plaintiffs from presenting any more evidence.

## **CONCLUSION**

Defendants' motion raises no new questions and fundamentally asks the same one they did before: whether in representative action, you can extrapolate testimony. This question has already answered by this Court, the Sixth Circuit, other courts, and the U.S. Department of Labor. Defendants' motion should be denied.


Dated: July 27, 2011                          Respectfully Submitted,

                                              s/Rachhana T. Srey
                                              Paul J. Lukas, MN Bar No. 22084X
                                              (W.D. Tenn. Admitted Generally)
                                              Rachhana T. Srey, MN State Bar No. 340133
                                              (W.D. Tenn. Bar Admitted Generally)
                                              4600 IDS Center, 80 South 8th Street
                                              Minneapolis, MN 55402
                                              Telephone (612) 256-3200
                                              Fax (612) 215-6870
                                              NICHOLS KASTER, PLLP

                                               &

                                              Donald A. Donati TN Bar # 8633
                                              William B. Ryan TN Bar # 20269
                                              1545 Union Avenue
                                              Memphis, TN 38104
                                              Telephone: 901-278-1004
                                              Fax: 901-278-3111
                                              DONATI LAW FIRM, LLP

## CERTIFICATE OF SERVICE

I certify that on July 27, 2011, a copy of the foregoing document was served via the Court's ECF system on Defendant's attorneys identified below:

Colin D. Dougherty
Eric Bronstein
Raymond J. Santarelli
Gregory Voshell
ELLIOTT GREENLEAF & SIEDZIKOWSKI, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422

&

Saul C. Belz
GLANKLER BROWN
One Commerce Sq., Ste. 1700
Memphis, TN 38103


s/Rachhana T. Srey
Rachhana T. Srey