UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | | |
|---|---|---|
| EDWARD MONROE, FABIAN MOORE, and TIMOTHY WILLIAMS, on behalf of themselves and all other similarly situated employees,<br>          Plaintiffs,<br>     v.<br><br>FTS USA, LLC, and<br>UNITEK USA, LLC,<br>          Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>No.  2:08-cv-2100<br>The Honorable Bernice B. Donald |

_____

**DEFENDANTS' MOTION AND MEMORANDUM TO RECONSIDER COURT RULING CONCERNING THE OVERTIME PREMIUM APPLICABLE TO ANY OVERTIME WAGES PLAINTIFFS MIGHT ESTABLISH AT TRIAL**

_____

Defendants FTS USA, LLC ("FTS") and UniTek USA, LLC ("UniTek") (together, "Defendants"), through their undersigned counsel, submit this Motion and Memorandum to Reconsider ruling concerning the overtime premium applicable to any overtime wages Plaintiffs might establish at trial.

The Department of Labor ("DOL") has already established that individuals working in a piece or job rate payment system are entitled to a ".5" overtime premium. Plaintiffs have suggested in previous filings that the ".5" premium under-compensates them and that, as a result, this Court should apply a "1.5" premium. To the contrary, Plaintiffs' proposal, as recognized by the FLSA itself, the DOL, the applicable case law, and plaintiffs in other cases, would actually overcompensate Plaintiffs by providing them with an overtime premium of "2.5." In fact, Plaintiffs' counsel, in a recent case in the United States District Court for the District of Minnesota, raised the

same argument they raise here, and the district court rejected it, noting that Plaintiffs' proposal was fatally flawed and contrary to the FLSA and its regulations. Thus, Plaintiffs' proposal is unsupported, it violates the FLSA, and it must be rejected by this Court.

## DISCUSSION

A.   **FTS PAYS ITS TECHNICIANS PURSUANT TO A PIECE RATE POLICY, THROUGH WHICH ALL OF THE TECHNICIANS' HOURS WORKED ARE COMPENSATED THROUGH THE PIECE RATES THEY RECEIVE.**

FTS technicians are paid pursuant to a piece or job rate policy.[1] Piece and job rate payments are lawful ways to pay employees (and, notably, Plaintiffs do not contend that the formal policy violates the FLSA). See 29 C.F.R. §§ 778.111-112. A description of the manner in which FTS calculates a technician's pay is essential to understanding the fundamental flaws in Plaintiffs' argument. As this Court explained in its summary judgment opinion, FTS technicians are paid a particular flat rate (or piece rate) for completing various tasks. Dkt. No. 238 at 4. These tasks are aggregated at the end of each week for purposes of calculating a technicians' total production. The total production value a technician accumulates each week is then used as the first of two components in calculating the technicians' "effective hourly rate."

The total number of hours worked per week, per technician is the second component of the equation for calculating a technician's effective hourly rate. FTS's formal policy instructs technicians to record, on weekly timesheets, all of the time they worked, including all overtime hours. Id. Once FTS receives an individual's weekly timesheet and their aggregate piece or job rates, FTS will calculate a technicians' effective hourly rate as follows:

(1) Effective Hourly Rate for Weeks Where No Overtime is Recorded: If an installation

---

[1] The parties dispute whether Defendants' policy is a piece or job rate policy. Because Plaintiffs' discussion of this issue tracks the piece rate regulations, Defendants will refer to their policy as a piece rate policy for the purposes of this Motion only. In any event, the overtime premium would be the same under either the job rate or the piece rate regulation. Compare 29 C.F.R. § 778.111 with § 778.112 (both requiring the ".5" premium).

2

technician submits time sheets displaying forty or less hours in a given week, that employee is paid an amount equal to his "effective hourly rate" multiplied by the number of hours worked. Rather than a traditional hourly wage (which carries a static value), a technician's effective hourly rate varies week-to-week and is tied to his or her aggregate piece or job rate—in other words, the effective hourly rate is "reverse engineered" from the technician's total production for a particular week. See § 778.111(a).

To calculate the effective hourly rate, the payroll department takes the total production value for each week and divides that value by the total number of productive and non-productive hours worked by the employee during the relevant week. For example, if a technician has a production value of $1,200 for a given week and submits a total of 40 hours, the effective hourly rate is $30.00 per hour (i.e., $1,200 / 40 hours = $30.00 per hour). Critically, in such a situation, the overtime provisions of the FLSA are not implicated, as the employee has not worked more than forty hours in a single week (and is therefore not entitled to overtime pay), and the employee has been compensated at a rate higher than the applicable minimum wage. The technician's gross pay for the week, therefore, is $1,200.

(2) Effective Hourly Rate for Weeks Where Overtime is Recorded: If an installation technician submits time sheets establishing that the technician worked more than forty hours in a single week, FTS pays that employee overtime equal to one and one half times the employee's effective hourly rate for that week for all hours worked over forty—the employee receives the effective hourly rate (the "1.0") and the added overtime premium (the ".5"), which together equal the required "1.5" compensation rate. To calculate the technician's "effective hourly rate," FTS totals the technician's production value and the total number of hours that the technician worked. FTS then divides the total production value by the total number of hours. The resulting

value is the employee's effective hourly rate for the week at issue (this, of course, is the same process whether overtime is worked, or not). FTS adds the overtime premium of ".5" to this rate for all hours in excess of forty to comply with § 778.111 and § 778.112.

Importantly, there exists an inverse relationship between hours worked and an individual's effective hourly rate. For example, if a technician produced $1,000 in production for a particular week in 25 hours of work, that technician's effective hourly rate is $40.00/hour ($1,000/25 = $40). If that same production value ($1,000) was instead produced in 40 hours, the technician's effective hourly rate is $25.00/hour ($1,000/40=$25). In each situation, however, the technician's gross pay is the same—$1,000. In other words, while the effective hourly rate may change, so long as the employee worked forty hours or less in a given week, the gross pay will remain the same (the effective hourly rate is the only thing that will change).

The inverse relationship between hours worked and an effective hourly rate is critical to understanding why Plaintiffs' argument is factually and legally invalid. Importantly, that inverse relationship complies with the FLSA. See Dufrene v. Browning Ferris, Inc., 207 F.3d 264, 268 (5th Cir. 2000) (reviewing job rate regulation and reminding that inverse relationship between hours worked and effective hourly rate does not violate the FLSA provided—as is the case here—the regular rate is constant for each respective week and overtime compensation is paid for hours worked in excess of 40). Thus, as discussed below, the addition of "hours worked" to the effective hourly rate calculation under § 778.111 does not alter the fact that the piece rates already compensated the technicians for all time spent working.

B. THE ADDITION OF ALLEGEDLY UNCOMPENSATED HOURS IMPACTS ONLY THE EFFECTIVE HOURLY RATE, NOT THE FACT THAT TECHNICIANS HAVE ALREADY BEEN COMPENSATED FOR THEIR SO-CALLED "STRAIGHT TIME."

Plaintiffs contend that, if they prove additional hours were worked by the technicians, the

4

technicians should be paid at "1.5" times each technician's effective hourly rate because those technicians would not have been compensated for their "straight-time" for hours worked but not recorded. See Dkt. No. 274 at 4-5. This statement is factually incorrect and has already been rejected by the DOL regulations on point. Plaintiffs' argument is premised on a situation involving a traditional hourly wage (where an employee, for example, receives $10.00 an hour for all hours worked and where that hourly wage is not affected by production). This framework, however, is inapplicable to this case, as "[o]f course, the Department of Labor through its interpretation of the FLSA recognizes that not all employees entitled to overtime compensation are paid by the hour. Some workers, for example, contract to be paid on a piece rate or a day rate basis and the regulations explain how to calculate the regular rate for these employees." Lee v. Vance Executive Protection, Inc., 7 F. App'x 160, 164 (4th Cir. 2001) (citing 29 C.F.R. §§ 778.111-112)). Pursuant to 29 C.F.R. § 778.111(a):

> When an employee is employed on a piece-rate basis, the regular hourly rate of pay is computed by adding together total earnings for the workweek from piece rates and all other sources (such as production bonuses) and any sums paid for waiting time or other hours worked (except statutory exclusions). **This sum is then divided by the number of hours worked in the week for which such compensation was paid, to yield the pieceworker's "regular rate" for that week**. . . . Only additional half-time pay is required in such cases where the employee **has already received straight-time compensation at piece rates or by supplementary payments for all hours worked.**[2]

(emphases added). As this regulation makes clear, because FTS compensated its technicians "at piece rates" for purposes of providing their straight time (as opposed to paying them at a more traditional "hourly" rate), FTS was only required to compensate the technicians at a ".5" or "half time" premium. In other words, because Plaintiffs' piece rates break-down into an effective hourly rate, they have already been compensated for their straight time.

These DOL regulations recognize that providing a 1.5 overtime premium would actually

---

[2] The job rate regulation provides the same guidance. See 29 C.F.R. § 778.112.

5

<u>over-compensate</u> technicians, as they have already received the straight time (or the "1.0" component of the overtime rate) through the piece rates. Stated another way, by aggregating all hours worked and all pieces or jobs completed, the regulations (and FTS's policy) produce an hourly rate for <u>each</u> hour worked during the week. Thus, even hours in excess of forty have already been paid at the regular (or effective) hourly rate and, to comply with the FLSA, an employer need only pay the premium (<u>i.e.</u>, the ".5"). If the employer paid an additional premium of 1.5, as Plaintiffs request, the employer would actually be paying a total premium of "2.5"— (1) the effective hourly rate (or, "1.0") and (2) the premium (which Plaintiffs suggest should be "1.5"). This is the precise reason that the DOL regulations call only for a .5 premium (to require otherwise would constitute legislation, thereby exceeding the DOL's administrative authority).

Plaintiffs attempt to argue that, to the extent they can prove that technicians worked time that they did not record, they have not received "straight time" for those hours worked. This is factually inaccurate (and fatal to their argument)—the technicians receive a calculated hourly rate based on the production they generate each week. As discussed above, the addition of hours merely affects the hourly rate itself, not the question of whether an hourly rate was already paid. Indeed, Plaintiffs tacitly admit this fact in their "motion <u>in limine</u>" addressing this issue. There, Plaintiffs selectively cite the relevant regulation (in the boldface that Defendants include herein): "Only half-time pay is required in such cases where the employee **has already received straight-time compensation** at piece rates or by supplementary payment **for all hours worked**." <u>See</u> Dkt. No. 277 at 6-7 (boldface in original). Plaintiffs strategically cease emphasizing the language of § 778.111 just before the phrase "at piece rates," recognizing that this prepositional phrase, which modifies the preceding phrase "already received straight-time compensation," dooms their position—<u>i.e.</u>, Plaintiffs in this case have already received straight-time pay "**at piece rates**" and,

6

consequently, they are entitled only to a ".5" premium for overtime hours. Thus, the regulations defeat Plaintiffs' arguments.

In addition to being refuted by the applicable DOL regulations, Plaintiffs' arguments have also been rejected by the federal courts to address the issue (and, notably, Plaintiffs have failed to cite a single case to support their position). For example, in <u>Gunter v. Rudder Capital Corp.</u>, No. 09-3016, 2010 WL 4121859 (D. Minn. Oct. 14, 2010) (attached as Exhibit 1), the court addressed the calculation of damages in a case brought **by Plaintiffs' counsel**, against a company that paid its employees pursuant to a piece rate system. There, after securing a default judgment, the court held a hearing on damages, at which Plaintiffs' counsel asked that court (as they ask this Court) to apply an overtime premium of 1.5, rather than the .5 prescribed by the federal regulations. <u>Id.</u> at *1. The <u>Gunter</u> court flatly rejected Plaintiffs' argument for the same reasons Defendants set forth above. Specifically, the <u>Gunter</u> court reasoned:

> Movants' [represented by Plaintiffs' counsel] calculation is flawed **because it would compensate overtime hours at two and a half times the regular rate rather than one and a half times the regular rate**. . . . Accordingly, because each Movant was already compensated at the regular rate for his overtime hours, he is entitled to only "a sum equivalent to one-half [of his] regular rate of pay multiplied by the number of hours worked in excess of 40 in the week."

<u>Id.</u> at *1-2 (quoting § 778.111(a)) (emphasis added). Thus, facing the same arguments raised by the same Plaintiffs' counsel (in a damages hearing after the entry of default), the <u>Gunter</u> court recognized that Plaintiffs' proposal would compensate technicians at a rate of 2.5 the regular rate, an improper method of overtime compensation under the FLSA. <u>Id.</u>; <u>see also</u> <u>Parker v. Nutrisystem, Inc.</u>, No. 08-1508, 2009 WL 2356823, *3 n.3 (E.D. Pa. July 30, 2011) (plaintiff conceded that as a piece rate employee, any damages would be calculated at an "extra 50%" of her regular rate—<u>i.e.</u>, ".5" of the regular rate—"for overtime hours").

Applying <u>Gunter</u> and the DOL regulations to this case unequivocally establishes the

7

invalidity of Plaintiffs' argument. For example, assume, <u>arguendo</u>, that a technician recorded ten hours of time worked and $500 dollars of production for a particular week, giving that technician an effective hourly rate of $50/hour ($500/10=$50). Now assume that Plaintiffs were able to prove that the technician actually spent 20 hours performing that work (but did not record that time on his timesheet). Adding those hours "back in" to that technician's payroll data would reduce the technician's hourly rate to $25/hour ($500/20 = $25.00). In both situations, however, because the overtime threshold was not attained, the regulations provide that the technician's pay would be $500 (as the hourly rate did not dip below minimum wage and the total aggregate hours did not exceed 40). Indeed, that individual will receive $500 as his gross pay no matter whether he spent one hour working or forty. It will increase only after the number of hours worked exceeds the overtime threshold. Under Plaintiffs' model, however, a technician who worked **and** recorded twenty hours of time would receive **less money** than a person who worked twenty hours and recorded just ten of those hours, even though each person generated $500 in production (as Plaintiffs would compensate the individual who did not record the time a second time for his "straight time"). This outcome is nonsensical, and is patently contrary to the FLSA and its enabling regulations.

The same principle—<u>i.e.</u>, that an additional 1.5 premium overcompensates technicians—holds true in cases where overtime hours are recorded. In other words, adding additional hours of allegedly uncompensated work (even if those hours exceed 40) will reduce the effective hourly rate. They will not alter the reality that the hourly rate has already been paid, through the piece or job rates, to the technicians. Thus, for overtime hours worked, the technician has already received the straight-time, and is only entitled to the premium. Under Plaintiffs' flawed model, individuals who worked sixty hours **and** recorded sixty hours would receive less compensation than individuals who worked sixty hours **but** recorded only fifty hours for the same amount of time worked and

production generated.[3]  Again, this position is contrary to the law and is the precise reason that the DOL regulations require only the half-time premium, thereby ensuring that individuals are compensated at time-and-a-half, not **double-time-and a half.**

Therefore, the federal regulations and persuasive case law are clear: Plaintiffs' proposed calculation methodology violates the FLSA by providing for payment of overtime wages at 2.5 times the regular rate (grossly exceeding the requirements of the § 207(a)).  Plaintiffs' arguments to the contrary—namely that the Plaintiffs would somehow be under-compensated by the federal regulations—are incorrect.  In fact, the "all or nothing" game they accuse Defendants of playing is precisely the route that Plaintiffs are taking, given that they are asking for all overtime compensation to be paid at a rate significantly higher than that required by federal law.  Thus, any damages in this case should be calculated pursuant to § 778.111-112, and the .5 overtime premium called for in those regulations.  This Court, just as the Gunter court did, should reject Plaintiffs' fictional approach to calculating any damages they prove to a jury at trial.

C.  **PLAINTIFFS' LAST MINUTE ATTEMPT TO REVIVE THEIR RELIANCE ON 29 C.F.R. § 778.318 FAILS.**

In their "motion in limine" on this issue, Plaintiffs attempt to revive their reliance upon 29 C.F.R. § 778.318, a regulation that distinguishes between productive and non-productive tasks.[4]  Plaintiffs originally relied upon this regulation when seeking conditional certification, see Dkt. No. 36-2, but they abandoned that theory at the decertification stage, see Dkt. No. 200 (failing to cite §

---

[3] For example, if a technician works and records a sixty hour week, that technician is entitled to the effective hourly rate for all hours worked, and an overtime premium of .5 for hours 41-60.  Under Plaintiffs' plan, a technician who worked the same amount of time and who generated the same amount of production would receive **more** money if s/he recorded only 50 of the sixty hours per week, as Plaintiffs would—without legal footing—apply a 1.5 premium for hours 51-60.  This is a paradoxical result that runs contrary to the regulations at issue.

[4] Notably, the fact that § 778.318 exists is further proof that, unless § 778.318 is triggered, pieceworkers are entitled to only the .5 premium.  If they were entitled to a 1.5 premium, § 778.318 would not need to distinguish between a ".5" premium and a "1.5" premium.  Thus, § 778.318—which is relied upon by Plaintiffs—further undercuts their position concerning the interpretation of § 778.111-112.

9

778.113 at all). Indeed, as recently as July 27, 2011, Plaintiffs—in opposing Defendants' motion to preclude representative proof—represented to this Court that this was not a case about the performance of various tasks. See Dkt. No. 249 at 17 (contending that in this case "there is no task-based dispute"). Yet, now Plaintiffs may argue that they should be compensated differently for various productive and non-productive tasks (even though Plaintiffs fail to identify those tasks).

Further, even if this Court was inclined to permit Plaintiffs to overcome their waiver and to disregard representations previously made in this case, the Espenscheid v. DirectSat USA, LLC & UniTek USA, LLC court recently decertified a class and collective action asserting a theory of liability under § 778.318. And, in any event, Plaintiffs' one-page suggestion that the regulation "must" apply to this case ignores the case law on the subject and the burden that they must meet at trial to establish both liability and damages. Defendants address these issues seriatim.

1. Section 778.318 distinguishes between productive and non-productive tasks. Plaintiffs originally sought conditional certification based in part on § 778.318, arguing that Defendants violated this regulation. Plaintiffs, however, did not rely or cite § 778.318 as one of their so-called "common theories" at the decertification stage. See Dkt. No. 200. Rather, they abandoned the § 778.318 theory altogether. Indeed, when this Court denied decertification, it relied upon the three so-called "common" theories—none of which involved § 778.318. Now, on the eve of trial, Plaintiffs may seek to re-introduce this theory into the case. This is just the latest example of how Plaintiffs' theories of liability and representations concerning the class-wide nature of such theories are shifting as this case nears trial. In any event, because Plaintiffs abandoned this theory at the decertification stage, they cannot now re-inject it as a theory of liability at this late stage. Thus, this Court should ignore Plaintiffs' last-minute attempt to revive their reliance upon § 778.318.

2. Even if this Court entertained Plaintiffs' attempt to rely upon § 778.318, as a series of

decision in Espenscheid v. DirectSat USA, LLC & UniTek USA, LLC make clear, the question of whether an agreement or understanding exists between the parties concerning what type of tasks a particular piece rate covers, is not capable of collective adjudication.  Pursuant to § 778.318(c), an employer can pay an employee for both productive and non-productive time with piece rates, if "it is understood by the parties that the other compensation received by the employee is intended to cover pay for such hours. . . . [I]t is permissible for the parties to agree that the pay employees will earn at piece rates is intended to compensate them for all hours worked, the productive as well as the non-productive hours."

Importantly, § 778.318(c) does not require a formal agreement.  See 29 C.F.R. § 778.318(c).  Rather, Section 778.318(c) requires only that the employees "agreed or understood that their piece rate compensation would also compensate them for their nonproductive hours." See Colindres v. QuitFlex Mfg., 427 F. Supp. 2d 737 (S.D. Tex. 2006) (emphasis added).  Such an agreement or understanding exists where "a company's policies, practices, and procedures provide a seemingly reasonable explanation of the flexible workweek plan to its employees . . . . Other probative evidence may include an employer's oral notification to employees of the plan, personnel forms, employee handbook and memorandums containing information concerning the fluctuating workweek plan . . . More significant is the fact that defendants used the same piece-rate system to compensate technicians for several years and technicians accepted paychecks month after month that were based on [the relevant] calculation." See Espenscheid, Dkt. No. 09-625, Doc. No. 485 at 65-67.

Because the relevant focus of § 778.318(c) is on the question of whether an agreement or understanding exists between individuals and Defendants, a trial on § 778.318(c) will devolve into minitrials concerning each individual's understanding of the piece rate payment plan, their

11

respective receipt of documents, complaints they made (if any) concerning the calculation of pay, and acceptance of paychecks for the duration of their respective employments. In effect, the jury will be asked whether an agreement existed between each Plaintiff and Defendants. Numerous courts have held that the question of whether an agreement exists is not an issue that can be adjudicated on a class-basis. See, e.g., Kasten v. Saint-Gobain Performance Plastics Corp., 556 F. Supp. 2d 941, 961 (W.D. Wis. 2008) (noting in wage and hour case that the existence or validity of a wage policy or practice "makes no difference to the questions whether class members had an express or implied contract with defendant or whether their donning and doffing time benefited defendant"); Cf. Vega v. T-Mobile, USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009) (holding plaintiff failed to show commonality under his breach of contract theory because the mandatory elements of "offer, acceptance, consideration or the essential terms" of each class member's contract depended on "individualized facts and circumstances"); In re: Wal-Mart, 2008 WL 3179315 at *19 ("Plaintiffs' breach of contract claims would involve particularized inquiry into contract formation, including such issues as meeting of the minds, breach, and damages.").

Indeed, as this Court knows from previous briefing, the Espenscheid case previously involved a subclass devoted to claims asserted under § 778.318. But, as trial approached, the court grew concerned about trying the case in a manner that comported with § 216(b) and due process. Thus, the court ordered the parties to submit renewed briefing on what aspects of the case could be tried in a collective or class setting. See Espenscheid, Dkt. No. 09-625, Doc. No. 595, at 15. The court specifically asked the parties to brief the issue of whether compliance with § 778.318 was a question that could be adjudicated on a class basis. Id. After reviewing the briefing, the Espenscheid court decertified all of the subclasses, including the FLSA subclass

addressing § 778.318.  See Dkt. No. 246-2.

Thus, even if this Court were to still entertain Plaintiffs' last-minute effort to re-inject § 778.318 into this case, Plaintiffs fail to recognize the significant due process and statutory violations that will occur if this issue is tried collectively.  Put simply, that one individual did or did not have an understanding with Defendants as to his or her calculated pay does not show that such an agreement is any more or less likely with another Plaintiff.

3.  Finally, in Plaintiffs "motion in limine," they ask for a global overtime premium of "1.5" because the record, according to Plaintiffs, is "devoid" of an agreement concerning what tasks the piece or jobs rates covered.  Dkt. No. 274 at 6.  This single-sentence argument ignores the actual standard under § 778.113 and the impact that applying § 778.113 has on calculating damages.  Thus, Plaintiffs' general citation to the entire record in this case should be rejected.

As stated above, § 778.318(c) requires an understanding or an agreement, which need not be formal or informal.  Receipt of policy books and employee handbooks together with continued acceptance of piece rate pay during the balance of an individual's employment is sufficient to show the existence of an agreement or understanding.  See Espenscheid, Dkt. No. 09-625, Doc. No. 485 at 66-68..  Indeed, in Espenscheid, the plaintiffs (unlike Plaintiffs here) moved for summary judgment on the issue of § 778.318.  See id. at 64-67.  The Espenscheid court denied their motion, emphasizing that a formal agreement was not needed and noting instead that the relevant analysis centers on an elastic, factor-based test.  Id. at 66-67.  Indeed, the court emphasized the importance of the fact that the technicians "accepted paychecks month after month that were based on" the calculation at issue.  Id. at 66.

Here, like Espenscheid, the technicians signed policy-book and employee handbook acknowledgement forms (verifying that they received and read the policies) and they continued to

13

accept paychecks based on FTS's calculation methodology week after week. Thus, the record is not "devoid" of facts supporting Defendants' position as Plaintiffs hollowly suggest. In fact, in <u>Gunter</u>, Plaintiffs' counsel raised these same arguments and, even in the absence of an opposition, the <u>Gunter</u> court rejected their arguments and properly imposed the ".5" premium mandated by § 778.111(a). See <u>Gunter</u>, 2010 WL 4121859, at *2-3.

Further, even if Plaintiffs are permitted to overcome their waiver and the significant issues with collective adjudication of the § 778.318 issue, Plaintiffs conveniently overlook how damages are actually calculated under § 778.318, and they fail to address their inability, without an expert, to prove damages on this issue. As §§ 778.318(a)-(c) make clear, if (as Plaintiffs suggest) there is no agreement or understanding concerning what tasks the piece rate covers, technicians should be compensated at a rate of ".5" for **productive** time and "1.5" for **non-productive** time. Plaintiffs do not receive a blanket "1.5" overtime premium for all overtime hours. Rather, they would need to show which of the allegedly unpaid overtime hours was spent performing productive tasks and which of the allegedly unpaid overtime hours were spent performing non-productive tasks.

Thus, after proving the absence of an agreement or understanding concerning what the piece rate covers, Plaintiffs would still need to identify which particular tasks were performed by which technicians <u>after</u> those technicians exceeded the forty hour threshold. Then, Plaintiffs would need to establish which tasks were productive and non-productive. To date, Plaintiffs have not even identified what tasks they consider to be productive and what tasks they consider non-productive. To the contrary, Plaintiffs contend that this is not a "task-based" case. <u>See</u> Dkt. No. 249 at 17 These calculations, which are required by § 778.318 are simply not possible without a trial plan sufficiently addressing them (which Plaintiffs proposed "trial plan" does not do) and without an expert to testify concerning the damages calculations. <u>See</u> Dkt. No. 246-3, <u>Espenscheid</u> Opinion

("Without an expert damages report, plaintiffs cannot establish damages in this case.").

Thus, even if this Court were to ignore, <u>arguendo</u>, Plaintiffs' waiver, their previous representations that run contrary to this theory, and the statutory and constitutional problems with class-wide adjudication of the § 778.318 issue, Plaintiffs cannot proceed with this theory.

## CONCLUSION

Plaintiffs' attempt to secure an overtime premium at double-time-and-a-half exceeds the mandates of the FLSA and the regulations that interpret the FLSA's requirements. Moreover, Plaintiffs' precise argument—made by Plaintiffs' counsel—has been already been rejected by another District Court. Further, Plaintiffs' attempt to revive their reliance on § 778.318 fails as a matter of law and a matter of fact, and is not appropriate for collective adjudication. Thus, Defendants respectfully submit that the Court reconsider its ruling and reject Plaintiffs' arguments concerning the overtime premium, and direct that any damages that may be found in this case should be calculated at the rate prescribed in § 778.111(a).

Respectfully submitted,

<u>/s/ Colin D. Dougherty</u>
Eric J. Bronstein
Raymond J. Santarelli
Colin D. Dougherty
Gregory S. Voshell
ELLIOTT GREENLEAF & SIEDZIKOWSKI, PC
Union Meeting Corp. Ctr.
925 Harvest Dr., Suite 300
Blue Bell, PA 19422
(215) 977-1000

Saul C. Belz
GLANKLER BROWN
One Commerce Sq., Suite 1700
Memphis, TN, 38103
DATED: October 4, 2011                    (901) 525-2389

15

## **CERTIFICATE OF SERVICE**

      I, Colin D. Dougherty, hereby certify that, on this date, I caused the foregoing to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document, upon the following:

        William B. Ryan, Esquire
        Donati Law Firm, LLP
        1545 Union Avenue
        Memphis, TN 38104

        Rachhana T. Srey, Esq.
        Nichols Kaster & Anderson, PLLP
        4600 IDS Center
        80 South 8th Street
        Minneapolis, MN 55402


        */s/ Colin D. Dougherty*
        COLIN D. DOUGHERTY

DATED: October 4, 2011

# EXHIBIT 1

Gunter v. Rudder Capital Corp.,
2010 WL 4121859 (D. Minn. Oct. 14, 2010)